CLYDE HYSLER v. STATE.

181 So. 350.

Division A.

(Case No. 1)

Opinion Filed February 3, 1938.
Rehearing Denied June 3, 1938.

202

*Sam B. Wilson,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

Buford, J.—Writ of error brings for review judgment of conviction of murder in the first degree with recommendation to mercy rendered in the Circuit Court of Duval County in February, 1937.

Plaintiff in error has not complied with Rule 20 in the preparation of brief in that questions of law involved are not stated. The brief states five propositions, as follows:

"1. Did the Court err in sustaining the defendant's plea in abatement of the indictment?

"2. Did the Court err in denying the defendant's motion for a change of venue?

"3. Did the Court err in sustaining the State's several

demurrers to the defendant's several challenges to the array?

"4. Did the Court err in denying the defendant's motions for a directed verdict?

"5. Did the Court err in denying the defendant's motion for a new trial."

This amounts to no more than stating assignments of error.

In many instances the plaintiff in error has failed to indicate in the brief the page or pages in the transcript where are to be found the records of the matters and things to which he refers. Failure to comply with the rule in this regard adds much to the labor of the Court. And, at best, we may conclude that the brief maker refers to one thing found in the record when he may have had an entirely different part of the record in mind.

Tyrus A. Norwood, Assistant Attorney General, however, has complied with the rule and stated the questions involved to be as follows:

Question No. I: "Does the Legislature have no power whatever under the Constitution to adopt a reasonable classification of counties to which shall be applicable in Act providing for jury commissioners and for the selection and listing of persons believed qualified as jurors, universality of present operation throughout all counties of the State being required of such an Act?"

Question No. II. "Does the fact that the Act applies only to counties having a population exceeding 155,000 inhabitants by the last preceding Federal Census, Duval County being the only County having such population, establish the unreasonableness of the classification based upon population or sustain the assertion that the Act is a special or local law, as distinguished from a general law, in con-

travention of Sections 20, 21, and 24 of Article III of the Constitution of Florida."

Question No. III. "If in fact a general and uniform law adopting a sustainable classification, is the Act any the less a general law by reason of its passage on the local bill calendar?"

Quetsion No. IV. "Does the Act violate the constitutional guaranty of trial by jury secured by Section III of the Declaration of Rights of the Florida Constitution or conflict in any way with Sections I and II of the Declaration of Rights or the Fourteenth Amendment to the Federal Constitution?"

Question No. V. "Should the Act be vitiated by reason of the use therein of the term 'inhabitants' rather than the term 'residents'?

Question No. VI. "Is the Act violative of Section 16 of Article III of the Florida Constitution by reason of the fact that its title does not contain a repealing clause as does Section 6 of the Act?"

Question No. VII. "Is this Court bound by the doctrine of *Stare Decisis* to affirm a judgment of the court below with respect to the question of the validity of the Act and the legality of the venire and jury panel thereunder where such questions are raised by assignments of error?"

Question No. VIII. "Did the lower court abuse its discretion in refusing to grant defendant's motion for a change of venue on the ground that the defendant could not secure an impartial trial in the County where the crime was committed, because of his family's odious reputation and the unusual notoriety given to the crime in the newspapers and otherwise, where the record discloses that a jury was selected after an examination of only thirty-seven jurors, and which jury found the defendant guilty of murder in the first degree, with recommendation for mercy?"

Question No. IX. "Did the lower court err in sustaining demurrer to defendant's challenge to the array of jurors when the only ground of challenge was that the jurors were not summoned by registered mail in accordance with the provisions of Sections 4463 and 4474, Compiled General Laws of Florida, 1927, when it appears that the above mentioned sections have been repealed by Chapter 12068, Laws of Florida, 1927."

The plaintiff in error in his reply brief has not challenged the correctness of the questions as stated above. Therefore, we will proceed to the disposition of the case by reference to those questions.

It will be observed that the 1st, 2nd, 3rd, 4th, 5th, 6th and 7th questions stated in different form go to the challenge of the validity of Chapter 16058, Acts of 1933.

The statute has been before us in the case of State, ex rel. Landis, v. Harris, 120 Fla. 555, 163 Sou. 237, and in Croissant v. Harris, et al. 121 Fla. 141, 163 Sou. 470. When those cases were before us the Court was equally divided as to the constitutional validity of the statute.

Every question presented here was presented in the cases above cited, except the two questions numbered 5 and 6 hereinabove quoted. We think that the contentions, (1) that the Act if otherwise valid would be vitiated by the use of the word "inhabitants" instead of the word "residents" is without merit, as is also (2) the contention that Section 16 of Article III is violated because the title of the Act does not refer to repeal of Acts in conflict therewith when such repealing clause is contained in Section 6 of the Act.

It is hard for us to conceive how anything might be stated for or against the validity of the Act which was not said in the several opinions which were written in the case of State, ex rel. Landis, v. Harris, supra. In that case the present writer expressed the opinion and held the view that

the Act was invalid because the classification was without reasonable basis to constitute the legislation a general Act and because Section 21, Article III of the State Constitution was not compiled with in connection with the introduction and passage of the Act. In view of the majority opinions which have been rendered upholding other legislative Acts as general laws, though applying to counties only having more than a certain number in population, and which opinions and judgments have been based upon the reasoning applied by Mr. Justice Whitfield in the case of State, *ex rel.* Landis, v. Harris, *supra,* I am now willing to recede from the views which I expressed in that case and concede that the law appears to have been established by opinions concurred in by a majority of this Court contrary to the views which I expressed in that case.

Regardless of what I may think the law should be, I must concede that it is what the majority of the final appellate court holds it to be. It is not necessary to rewrite what was written in State, *ex rel.* Landis, v. Harris, *supra,* by Mr. Justice Whitfield, to hold the Act attacked valid.

The lower court, by its rulings upon the questions referred to, held the Act to be valid.

The disposition of this question makes it unnecessary to discuss Question No. 7. It may not be amiss, however, to say that in the case of Croissant v. Harris, *et al.,* it was held: "Statute providing for jury commissioners in counties having population in excess of 155,000 and for selection of jurors in such counties, is to be enforced as valid Act so long as no judgment holding it unconstitutional has been concurred in by majority of Supreme Court sitting *en banc.* (Acts 1933, c. 16058)."

And, therefore, under the rule of *stare decisis* we should hold that Chapter 16058, Acts of 1933, was required to be enforced as a valid Act at the time the jury was drawn and

the trial was had in the instant case. See Dillon on Laws and Jurisprudence of England and America 231, State v. Butler, 70 Fla. 102, 67 Sou. 771.

Under the application of such rule we cannot say that the lower court committed error in following the decision of this Court in the instant case.

The eighth question brings for consideration the motion for a change of venue.

Motion for change of venue was made upon the ground, broadly, that because of the odious reputation of defendant's family, and the unusual notoriety given the crime in the newspapers, and otherwise, the defendant could not procure a fair trial in Duval County. The record shows that the Court considered the motion for change of venue with the State's joinder of issue thereon and evidence adduced, in support of and against the motion, and denied the same. That there was no reversible error committed in this regard is conclusively shown by two salient facts. The first is, that a jury was accepted after examination of only thirty-seven (37) veniremen; that four of those excused were challenged because they did not believe in capital punishment; five were excused because they had formed opinions; three were excused because of acquaintance with the defendant or his family; two were excused because they were related to a State's witness; one was excused because he had been a former police officer and one was excused because one of his friends had secured affidavits in support of the motion for change of venue; nine were excused peremptorily. The other fact is that a jury was chosen and empaneled which returned a verdict of murder in the first degree with recommendation to mercy when the evidence was amply sufficient to support a verdict of murder in the first degree and there is little, if anything, in the record to constitute a basis for recommendation to mercy.

It is well settled that in an order for a reversal of a conviction because of the denial of a motion for change of venue there must be shown a palpable abuse of sound discretion. Leslie v. State, 35 Fla. 171, 17 Sou. 555; Shappard v. State, 36 Fla. 374, 18 Sou. 773; Jeffcoat v. State, 103 Fla. 466, 138 Sou. 385. See also Chisholm v. State, 74 Fla. 50, 76 Sou. 326, where it was held: "In passing upon an assignment in a criminal case based upon the refusal of an application for a change of venue the appellate court may examine the entire transcript of record."

Plaintiff in error contends that because the jury was not summoned by registered mail in accordance with the provisions of Sections 2786 and 2787 R. G. S., 4463 and 4464 C. G. L., the jury was not properly summoned and, therefore, the defendant's challenge to the array should have been granted.

There is no contention that the jurors appearing were not the identical persons whose names were drawn for jury service and for whom summons was issued by the Clerk and placed in the hands of the Sheriff for service and, therefore, the contention made is without merit. The defendant could not be either benefited or harmed by the method of service which was adopted by the Sheriff. In fact, it would have been immaterial whether legal service had been made upon the venireman or not, if, in response to such service as was made, he appeared in court and answered to his name when called as a venireman; the result was all the same to the defendant and he is not in position to complain, unless he can show that some right guaranteed to him was invaded by the method used in serving the process of the court to procure the attendance of the juror.

The record in this case is voluminous, consisting of more than 3000 pages, much of which constitutes irrelevant and

immaterial matter. A careful consideration has revealed no reversible error and the judgment should be, and is, affirmed.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and CHAPMAN, J., concur in the opinion and judgment.

BROWN, J., not participating.