EDGAR WAYBRIGHT, JR., v. DUVAL COUNTY; J. G. CARY, R. D. GORDON, RAY GREENE, J. F. HAMMOND and W. HOWARD BELOTE, JR., as Members of and Constituting the Board of County Commissioners of Duval County; and HUDSON DREW, JOSEPH M. GLICKSTEIN, C. F. TRESCA, DR. WILLIAM N. STINSON and DAN ELLIS, as Members of and Constituting the Civil Service Commission of Duval County, and JOHN D. BAKER as Clerk of the Civil and Criminal Courts of Record of Duval County.

196 So. 430
En Banc
Opinion Filed May 10, 1940
Rehearing Denied June 7, 1940

W. Gregory Smith and R. R. Axtell, for Appellant;

J. Henry Blount, Bedell & Bedell and Jennings & Coffee, for Appellees;

John D. Baker as Clerk of the Civil and Criminal Courts of Record of Duval County, Florida, in proper person, Appellee.

THOMAS, J.—In this controversy the appellant, who was plaintiff in the circuit court, is a taxpayer, and the appellees are the County of Duval, the members of the board of county commissioners, the members of the civil service commission and the clerk of the civil and criminal courts of Record.

The relief sought was an injunction to prevent the expenditure of public moneys on the order of the civil service commission, but the real purpose of the suit was to test the constitutionality of the Act creating that body, Chapter 19180, Laws of Florida, Acts of 1939.

The chancellor dismissed the bill of complaint expressing in his opinion some doubt of the validity of the Act but resolving it in favor of its constitutionality. Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 South. Rep. 377, 20 Ann. Cas. 1047.

Doubtless the chancellor applied the proper rule in considering the matter and he was eminently correct in holding as he did when he was not convinced of the unconstitutionality of the enactment.

Without indulging any presumption of the propriety of

his conclusion but on the other hand indulging the one that the Act is constitutional, we will approach the subject as he did to determine if, beyond a reasonable doubt, violence was done any provisions of the organic law in the passage of the challenged Act and in doing so we will not deal with the merits of the measure, that being the exclusive concern of the legislature.

The Act was an effort on the part of the legislative branch of the government to establish a comprehensive plan for the creation and operation of a civil service commission in counties of a "population of *Not Less Than One Hundred Sixty-Five Thousand and Not More Than One Hundred Eighty Thousand* According to the Last Florida State Census, or Any Subsequent State or Federal Census." The words quoted from the title which we have italicized are the ones which provoked this attack.

The only county falling within this classification at the time the measure became effective was the one which is a party to this suit and it is conceivable that it can in a future census pass from the designated span of population by losing inhabitants until it has fewer than one hundred sixty-five thousand or, more probably, gaining until its population exceeds the larger number. It is possible, too, that some county with residents short of the minimum number upon the taking of one census might pass beyond the other limitation upon a succeeding one, thereby failing to receive the benefits of the civil service plan.

We state such possibilities at the outset because they naturally influence the court in a study of the relationship between the population range, within which a county must fall to take advantage of the Act, and the subject matter of it.

It is conceded by appellant, however, that, no provision having been included for abolition of the plan when once

established, a county could not lose it by an increase in population in excess of one hundred eighty thousand.

There must be a reasonable basis for a classification of this character, else the Act will be declared a local one. State *ex rel.* Buford v. Shepard, 84 Fla. 206, 93 South. Rep. 667; State *ex rel.* Buford v. Daniel, 87 Fla. 270, 99 South. Rep. 804.

The civil service scheme is of comparatively recent origin and is a progressive step in the government of public affairs. Why it should be adaptable or practical in a county of one hundred sixty-five or one hundred seventy-five thousand inhabitants and of a lesser value or usefulness in one of one hundred sixty or one hundred ninety thousand persons is so difficult for us to understand that we entertain a reasonable doubt of its validity. It is impracticable to draw a definite and distinct line of demarcation on one side of which some "population statutes" may stand and others fall because of the variety of categories offered and subjects proposed but must in each case hark back to the original rule of reasonable relationship.

Our perusal of the briefs here and of the record, bearing in mind meanwhile the practical application of a civil service statute and the apparently arbitrary figures adopted, leads us to the conviction that every reasonable doubt being resolved in favor of the soundness or validity of the Act, still there is not a just relationship between the governmental plan and the population of the counties where it may be employed.

In adopting this view we have not ignored the case of State *ex rel.* Buford v. Smith, 88 Fla. 151, 101 South. Rep. 350, where the Act in question affected counties with a range in population from eighty to one hundred thousand. The observation was made there that the law being considered was in effect general because "within a proper classification

and * * * potentially applicable to every county of the state * * *" adding, though, that "If the Acts are local laws they do not violate Sections 20 and 21 of Article III (Const.) in view of Section 24 of Article III." 88 Fla. text 155.

The date of this pronouncement is significant for it was written before the amendment in 1928 with reference to publication of notice of intention to apply for special legislation and at a time, therefore, when the doctrine established in Stockton v. Powell, 29 Fla. 1, 10 South. Rep. 688, 15 L. R. A. 42, was in force. (See also amendments to Section 21, Article III, adopted in 1938.)

It should be emphasized that the same end could have been accomplished by the passage of a local bill in the manner prescribed by the Constitution and that those very restrictions were calculated to prevent the enactment of local or special laws under the guise of general ones. Harrison v. Wilson, 120 Fla. 771, 163 South. Rep. 233.

Regardless of the merits of the legislation, which are not under question, and dealing only with the manner of enactment, we entertain more doubt of the validity of the Act than did the learned chancellor and we conclude that because of the indistinct relationship between the purposes of the law and the populations of counties where it would be applicable or available, it is in reality a special Act, hence cannot stand having been enacted by the legislature as a general one. John S. Anderson, Jr., v. The Board of Public Instruction, 102 Fla. 595, 136 So. 334.

The order dismissing the bill of complaint is—

Reversed.

TERRELL, C. J., WHITFIELD, P. J., BROWN and BUFORD, J. J., concur.

CHAPMAN, J., dissents.

CHAPMAN, J. (dissenting).—I am unable to agree to the majority opinion in this case.

From a final decree sustaining the constitutionality of Chapter 19180, Laws of Florida, Acts of 1939, made and entered by the Circuit Court of Duval County, Florida, an ·appeal has been perfected to this Court and several assignments of error are presented and argued in this Court for a reversal.

Chapter 19180, *supra,* creates a Civil Service Commission for all counties in Florida having a population between 165,000 and 180,000 population, based on the last State or Federal census. The Act prescribes what employees shall be under the Civil Service regulation; defines civil service, and defines the rights and duties of county employees thereunder. A Civil Service Commission is created with prescribed duties and powers, and a method adopted for the appointment of the members thereof.

A summary of the Act is that it undertakes to protect from ·the fortunes and misfortunes of political upheavals faithful employees who have spent years in the service of the counties falling within the population brackets. It gives or affords them security from ruthless dismissals and thereby presents an opportunity to acquire homes, rear and educate their children, allows vacations, sick leave benefits, encourages honesty and faithfulness, and provides for promotions and increases in pay for efficient services. It is another step in a program for the amelioration of the conditions and circumstances of those compelled to win their bread by the sweat of the brow.

The chancellor below, in the decree entered, in considering the objective of the Act, said: "The creations of a Civil Service Commission in large counties where there are many employees is no doubt a worthy undertaking. Acts of this nature seek to protect those who have been in the

employ of the county for many years and renders their tenure more secure." The Act is in accord with steps taken by progressive communities of the nation, but the Legislature of Florida was about a quarter of a century slow or behind many other states in its enactment.

The Supreme Court of Florida, more than fifty years ago, held that a liberal rule of construction or interpretation of statutes should be applied when the constitutionality thereof is called into question and every reasonable doubt should be resolved in favor of the validity of the statute assailed. It is the duty of the court, in deference to the legislative department of the government, to uphold a statute unless it is clearly made to appear beyond a reasonable doubt that the statute is unconstitutional. See Atlantic Coast Line R. Co. v. Coachman, 59 Fla. 130, 52 So. 377, 20 Ann. Cas. 1047; Campbell v. Skinner Mfg..Co., 53 Fla. 632, 43 So. 874; State v. Sullivan, 95 Fla. 191, 116 So. 255; Holton v. State, 28 Fla. 303, 9 So. 716; State v. Rose, 97 Fla. 710; 122 So. 225; State v. Burns, 38 Fla. 367, 21 So. 290; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. 282. The law presumes that the lawmaking power intended a valid, constitutional enactment. See State v. Phillips, 70 Fla. 340, 70 So. 367; Hires v. Mitchell, 95 Fla. 345, 116 So. 81.

Counsel for appellant contend that Chapter 19180, *supra,* is unconstitutional and void and passed by the Legislature as a general law, but not within the constitutional requirements of special or local legislation, and that the population brackets being fixed at between 165,000 and 180,000 renders the Act unreasonable, arbitrary and an unlawful classification.

Fault cannot be found with the authorities of State *ex rel.* Railroad Com'rs v. A. C. L. R. Co., 60 Fla. 465, 54 So. 394, and Goldstein v. Maloney, 62 Fla. 198, 57 So. 342,

cited in the majority opinion, and holding to the effect that a reasonable basis msut exist in the statutes for the classification and the classification must not be arbitrary, or with the cases of State v. Daniel, 87 Fla. 270, 99 So. 804; and State *ex rel.* Buford v. Smith, 88 Fla. 151, 101 So. 350. There does not exist under the decisions of Florida legal justification or reason for the striking down of this humanitarian statute as similar statutes have been by this Court sustained.

In the case of State *ex rel.* Landis v. Wheat, 103 Fla. 1, 137 So. 277, the Court had before it the question of the constitutionality of Chapter 10501, Acts of 1925, creating the office of Auditor and Purchasing Agent for Dade County and prescribing his official duties and fixing the amount of his salary. It was contended that the Act was a local law and violated Sections 20 and 21 of Article 3 of the Constitution of Florida. The Court said:

"The statutory office created by the enactment is the only one in the class and the regulation of the duties and compensation of the officer is an incident to the creation of the office, there being no other of that class. In State *ex rel.* Cohen v. O'Neal, 99 Fla. 1053, 128 So. 489, the provision of Chapter 11363, 11982 and 13611, regulating the fees of Clerks of the Criminal Courts of Record were held invalid because there were other Clerks of the Criminal Courts of Record in the class with the relator in that case, and Section 20, Article III of the Constitution forbids local or special laws regulating the fees of any class of officers except municipal officers. In Knight v. Board, decided at this term, the statute was designed to regulate the duties of the Board of Public Instruction in one county, there being such a Board in all the counties. Consequently the Act violated Section 20, Article III of the Constitution.

"The statute in this case is not designed as a regulation

of the jurisdiction and duties of County Commissioners, and of the Clerks of the Circuit Court. Even if the statute by its operation regulates the duties of County Commissioners and of the Clerk of the Circuit Court in Dade County, it is merely an incident to the creation of a statutory office in the county, and the regulation of the duties of the officer. But the duties prescribed for the Auditor and Purchasing Agent are additional and supplemental and do not change or regulate the duties of the County Commissioners or the Clerk of the Circuit Court for Dade County within the meaning of Section 20, Article III. The statute does not purport to regulate the jurisdiction and duties of County Commissioners or of the Clerk of the Circuit Court; and the Auditor and Purchasing Agent for Dade County created by the enactment was then the only such officer in the State; and as to him the statute had the effect of a general law."

The statute *supra* transferred some of the official duties of the Clerk of the Circuit Court of Dade County to the Auditor and Purchasing Agent of Dade County. The Court held that the law was constitutional. In the case at bar the administrative duties now resting on the county officers of Duval County in the hiring of employees are merely transferred and given over to the Civil Service Board, as the Clerk's administrative duties were transferred to the Auditor and Purchasing Agent of Dade County.

Chapter 9274, Acts of 1923, Laws of Florida, was, viz.: "An Act Creating a County Welfare Board for Each County Having a Population of Over One Hundred Thousand; Prescribing Its Powers and Duties; Providing for Its Financial Support and Providing for the Qualifications of Its Members, etc." It will be observed that Chapter 9274 affects counties having a population of 100,000 or more according to the last Federal Census and it was ad-

mitted on the record that it applied *only* to Duval County. The Court sustained the Act against an attack as an unreasonable and arbitrary classification based on a population basis and the Court, speaking through Mr. Justice WHITFIELD, in the case of State *ex rel.* BUFORD, v. Daniel, 87 Fla. 270 (text pp. 286-8), 99 So. 804, said: .

"Chapter 9274 is not a 'special or local law,' for the reason that it is a law based .upon a proper classification that is potentially applicable throughout the State, in that any county may acquire a population of over 100,000, though only one county may now be in that class. The provision 'according to the last Federal census' is progressive and has reference to each Federal census as it occurs. *Ex Parte* Wells, 21 Fla. 480; State *ex rel.* Lamar v. Jacksonville Terminal Co., 41 Fla. 363, 27 South. Rep. 221; Collier v. Cassady, 63 Fla. 390, 57 South. Rep. 617; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88; Whitaker v. Parsons, 80 Fla. 352, .86 South. Rep. 247; Carlton v. Johnson, 61 Fla. 15, 55 South. Rep. 975; Fine v. Moran, 74 Fla. 417, 77 South. Rep. 533; Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902; Harwood v. Wentworth, 162 U. S. 547, 16 Sup. Ct. Rep. 890; *Ex Parte* Loving, 178 Mo. 194, 77 S. W. Rep. 508; State *ex rel.* v. Condon, 108 Tenn. 82, 65 S. W. Rep. 871; Cook v. State, 90 Tenn. 407, 16 S. W. Rep. 471; Archibald v. Clark, 112 Tenn. 532, 82 S. W. Rep. 397; . City of Indianapolis v. Navin, 151 Ind. 139, 47 N. E. Rep. 525, 51 N. E. Rep. 80; 25 R. C. L. 818; 227 U. S. 51; Ann. Cases 191 B. 968;124 Tenn. 235.

"Uniformity of operation throughout the State does not require universality of operation throughout the State. The former relates to. similarity of conditions affecting subjects or localities of the State that are appropriately classified. The latter relates to the whole and every part of the State.

"A statute relating to subdivisions of the State or to subjects or to persons or things as a class based upon proper distinction and differences that inhere in or are peculiar or appropriate to the class, is a general law; while a statute relating to particular subdivisions or portions of the State or to particular places of classified localities, is a local law; and a statute relating to particular persons or things or other particular subjects of a class, is a special law.  See 17 Fla. 238.

"Classifications of counties for governmental purposes based upon population is permissible in enacting general laws.  Clark v. Finley, 93 Tex. 171, 54 S. W. Rep. 343; Farnum v. Warner, 104 Cal. 677, 38 Pac. Rep. 421; Thomas v. State, 136 Tenn. 47, 188 S. W. Rep. 617; State v. Ames, 91 Minn. 365, 98 N. W. Rep. 190; Hall v. State, 124 Tenn. 235, 137 S. W. Rep. 500; Russell v. Esmeralda County, 32 Nev. 304, 107 Pac. Rep. 890; Murphy v. State, 114 Tenn. 531, 86 S. W. Rep. 711; Cooper v. Rollins, 152 Ga. 588, 110 S. E. Rep. 726, 20 A. L. R. 1105; Commonwealth v. Blackley, 198 Pa. 372, 47 Atl. Rep. 1104.

"The decision in Murray v. Board of Com'rs of Ramsey County, 81 Minn. 359, 84 N. W. Rep. 103, on the facts under the controlling organic law is not in conflict with the above citations.

Even if the statute may be regarded as a local or special law, such laws are by the Constitution expressly authorized for purposes of county government (Sec. 24, Art. 3), and the Act is not for the 'assessment and collection of taxes,' or 'regulating the jurisdiction and duties of any class of officers' within the meaning of Section 20, Art. 3 of the Constitution, but it is for the establishment of a public instrumentality to serve a county purpose, not in conflict with, but consonant with the command of Section 3, Article 13 of the Constitution that 'The *respective* counties of the State

shall provide *in the manner prescribed by law* for those of the inhabitants that by reason of age, infirmity or misfortune, may have claims upon the aid and sympathy of society.' "

In the case of Beasley v. Cahoon, 109 Fla. 106, 147 So. 288, the court had before it constitutionality of Chapter 10177, Acts of 1925, Laws of Florida. The Act was designed to regulate the business of making loans in certain counties having a population of 40,000 or more, according to the last Federal census, in the sum of $300.00 or less, at a greater rate of interest than 10 per cent per annum, and to violate the Act was made a misdemeanor and punishable by fine or imprisonment. The Act was attacked on the ground of unlawful classification by population and on the further ground it was a special Act in that it violated Section 20 of Article 3 of the Constitution of Florida, wherein it was made a crime or misdemeanor to do certain things in one county which were unlawful in another. The Act was sustained by this Court against the attack of unlawful classification on a population basis, and in so doing, said:

"The statute does not apply 'to counties having a population of less than forty thousand, taken from 1925 census or any subsequent census.' The organic sections require laws 'for the punishment of crime or misdemeanor' to be of 'uniform operation' throughout the State,' but do not require such laws to be of *universal* operation, and permits classifications of subjects for statutory regulation by general laws, when the classification has a basis in real differences of conditions affecting the subject regulated, and the classification applies in general to all similarly conditioned with reference to the subject regulated; and a classification may be based upon the population of counties, even though the Act does not embrace all counties that could have been included, or omits some that need but do not have statu-

tory regulation, where the classification made is not merely capricious. State *ex rel.* v. Daniel, 87 Fla. 270, 99 So. 804; Sparkman v. Co. Budget Com., *et al.,* 103 Fla. 242, 137 So. 809. This Act requires the exercise of a governmental function in licensing and regulating the business of making small loans, and is designed to remedy an evil which the Legislature conceivably and reasonably found to exist chiefly in the more populous counties of the State. This renders the classification valid, even though the evil also exists and is unregulated in other counties to which the Act does not apply. The statute is potentially applicable to every county of the State. Collier v. Cassady, 63 Fla. 390, 57 So. 617; Sparkman v. Co. Budget Com., *et al.,* 103 Fla. 242, 137 So. 809. * * *

"As shown by its preamble, set out in the statement hereto, the enactment is designed to remedy an existing evil, which the Legislature conceivably and reasonably could, and apparently did, determine was more pronounced and harmful in the more populous counties of the State. The lawmaking power may under its police power, as was done in this case enact regulations that are not all embracing; and may classify regulatory enactments with reference to degrees of evil and to the location where the evil is most harmful, without denying the equal protection of the laws. If the greatest of the evils sought to be remedied exist in the counties having relatively large populations, statutes may determine the lines of differentiation without denying to any person the equal protection of the laws. No one can justly or legally demand all the rights or exceptions enjoyed by others if there is a reasonable basis for the discrimination complained of; and those who assert an unjust discrimination by the State in violation of the Federal Constitution, have the burden of showing that the asserted discrimination has no conceivable basis in differences of conditions,

sufficient to justify the statutory regulation complained of. No such showing is made in this case. The opportunities in the larger counties for the abuses sought to be remedied by this statute afford a sufficient basis for a classification on a 40,000 population unit. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369; Mutual Loan Co. v. Martell, 222 U. S. 225, 32 Sup. Ct. 74, 56 L. Ed. 175; Keokee Consolidated Coke Co. v. Taylor, 234 U. S. 224, 34 Sup. Ct. 856, 58 L. Ed. 1288; Miller v. Wilson, 236 U. S. 373, 35 Sup. Ct. 342, 59 'L. Ed. 628; Rast v. Vandeman & Lewis Co., 240 U. S. 342, 36 Sup. Ct. 370, 60 L. Ed. 679; Whitney v. California, 274 U. S. 357, 47 Sup. Ct. 641, 71 L. Ed. 1095. * * * "

It is difficult to determine the constitutional distinctions between Chapter 19180, Acts of 1939, involved in the case at bar, and Chapter 14678, Acts of 1931, creating the County Budget Commission of Hillsborough County, which this Court sustained against all constitutional attacks in the case of Sparkman v. Co. Budget Com., 103 Fla. 242, 137 So. 809. The identical attacks on constitutional grounds were made on the Budget Commission Act and sustained by this Court, as are now being made against Chapter 19080, Acts of 1939, being the Civil Service Commission Act for Duval County. There is no constitutional difference in the two Acts.

The title to Chapter 14678, Acts of 1931, is viz.:

"An Act to Create a County Budget Commission in Counties Having a Population of More Than One Hundred and Fifty Thousand by the Last Preceding State or Federal Census to Prescribe the Powers, Duties and Functions of such County Budget Commission and the Qualifications, Terms of Office and Methods of Appointment or Election of Members Thereof; and to Authorize Such County

Budget Commission to Make and Control the Budgets of Receipts and Expenditures of the Board of County Commissioners, Board of Public Instruction, County Welfare Board, Parental Home Board and all other Boards, Commissions and Officials of such Counties or of Taxing Districts (except School Districts) Situate Therein Authorized to Raise and Expend Moneys for County District Purposes."

The Court, in sustaining the above entitled Act, bottomed its holdings on the same authorities as cited in State, *ex rel.* Landis v. Wheat, State *ex rel.* Buford v. Daniel, and Beasley v. Cahoon, *supra,* and said (103 Fla. text pp. 247-8, 249-50):

"Chapter 14678 is not a local law since it makes a reasonable classification of counties for the statutory enactments. It applies to all 'counties having a population of more than one hundred and fifty thousand by the last preceding State or Federal census.' The reference to the last preceding census is progressive and all counties may in time attain the stated population. See State *ex rel.* v. Smith, 88 Fla. 151, 101 So. 350; State *ex rel.* v. Daniel, 87 Fla. 270, 99 So. 804. * * *

"It is within the province of the legislature to regulate the amounts paid for assistants and other office expenses, so as to insure that such expenditures shall be 'reasonable.'

"Where as in this case an administrative tribunal is authorized to determine what is a reasonable amount to be paid for office assistants and expenses, the statute contemplates that such determination shall be upon a due consideration of appropriate data relating to the reasonable requirements for the help and other expenses in the particular office; and such determination of reasonableness, if an abuse of authority, is subject to judicial review in appropriate proceedings.

"The statute provides that expenditures by county officers for the salaries of clerks and assistants and the necessary expenses for the operation of the offices respectively shall be 'reasonable.' This is the standard fixed by the law, and statutes may authorize an administrative board to determine, subject to judicial review, what are such *reasonable* expenditures, without making an unlawful delegation of legislative power. See R. R. Com. v. P. & A. R. R. Co., 24 Fla. 417, 5 So. 129, 12 Am. St. Rep. 220, 2 L. R. A. 504; State v. A. C. L. Ry., 56 Fla. 617, 47 So. 969, 32 L. R. A. (N. S.) 639; 12 C. J. 847."

· In the case of State *ex rel.* Buford v. Smith, 88 Fla. 151, 101 So. 350, this Court had before it the constitutionality of Chapter 8541, Acts of 1921, as amended by Chapter 9314, Acts of 1923. The title to the original Act was not amended by Chapter 9314. The title of the Act provided :

"An Act Providing for the Creation of the Office of Traffic Officer, and Providing for the Appointment, Compensation, Expenses, Duties and Powers of such Traffic Officer, and the Term of Office, in Counties of More Than Eighty Thousand and Less than One Hundred Thousand Population, According to the Last Preceding Federal Census."

This Court sustained the Act against a constitutional attack on an arbitrary and unreasonable classification on a population basis and in so doing, said :

"The statutes are general laws in that they are applicable to all counties within a proper classification and are potentially applicable to every county of the State since all the counties may attain the requisite population. The classification cannot be said to be purely arbitrary, but it is a reasonable and practical classification within the legislative discretion. If the Acts are local laws they do not violate

Sections 20 and 21 of Article III in view of Section 24 of Article III. See State *ex rel.* v. Daniel, 87 Fla. 270, 99 South. Rep. 804."

Chapter 16058, Acts of 1933, Laws of Florida, created a Jury Commission in all counties of Florida having a population exceeding 155,000 by the last preceding Federal census, prescribed their qualifications, method of appointment, powers, duties, functions, official terms, etc. The Act was applicable to all counties in Florida having a population exceeding 155,000. It was admitted of record that the Act would affect no county of Florida other than *Duval* when enacted. It was argued that Chapter 16058 was a local law and could apply only to one county and passed the Legislature as a local bill; and that the classification as made of counties by population was arbitrary and without any reasonable basis. The Act was sustained by a divided Court. See State *ex rel.* Landis v. Harris, 120 Fla. 555, 163 So. 237. This Court considered for the second time the constitutionality of Chapter 16058, and it was fully sustained as against an arbitrary and unreasonable classification on a population basis. See Hysler v. State, 132 Fla. 200, 181 So. 350.

Section 1 of Article 12 of the Constitution of Florida requires that the Legislature shall provide for a *uniform system* of public free schools and shall provide for the liberal maintenance of the same. Chapter 18743, Acts of 1937, Laws of Florida, is an Act providing for tenure of employment of teachers in the public schools of Orange County. The application of the Act is limited to the teachers in the public schools of Orange County. This Court, in sustaining the Act against constitutional attacks on grounds of being local legislation and conflicting with the constitutional provision as to a uniform system of public schools, in the cases of State *ex rel.* Glover v. Holbrook;

State *ex rel.* Glover v. Munnerlyn, 129 Fla. 241, 176 So. 99, speaking through Mr. Justice BROWN, said:

"By a long line of authorities this Court has held that where the main purpose of a local or special Act is valid and constitutional, and where the effect of such Act upon the jurisdiction or duties of State or county officers is merely incidental to such main purpose, the Act will not be held to be in violation of that provision of Section 20 of Article III of the Constitution which prohibits the passage of special or local laws regulating the jurisdiction and duties of any class of officers except municipal officers. See: Lainhart v. Catts, 73 Fla. 735, 75 Sou. Rep. 47; Krogel v. Whyte, 62 Fla. 527, 56 Sou. Rep. 498; State v. Fearnside, 87 Fla. 349, 100 Sou. Rep. 256; Apgar v. Wilkinson, 95 Fla. 457, 116 Sou. Rep. 78; Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 Sou. Rep. 771; State v. Wheat, 103 Fla. 1, 137 Sou. Rep. 277. Without attempting any review of the cited cases, we think these previous decisions by this Court are sufficient answer to this attack upon the constitutionality of the Act. * * *

"Somewhat for the same reasons which moved the Court to hold that this special Act is not in contravention of that provision of the Constitution which prohibits the regulation by special or local laws of the jurisdiction and duties of any class of officers except municipal officers, a majority of the Court are of the opinion that said Act now under review cannot be held to be in conflict with said Section 1 of Article XII. The purpose of the Act, as stated in its title, is 'to provide for the tenure of employment of teachers in the public schools of Orange County,' and the majority of the Court are of the opinion that the provisions of the Act to that end are not such a departure from the constitutional provisions above referred to as would authorize this Court to hold the Act unconstitutional and void. * * *"

It appears to be well established law that a statute which classifies cities or other localities to be governed by its provisions by a given or fixed population according to the last United States census will be held to apply to all other cities or localities which under any Federal census may in the future pass into such class and is therefore valid. See 12 Am. Jur. 170, par. 489; 6 A. C. L. 388, par. 380; 16 Corpus Juris Secundum, page 963, Subsection (b) par. 494; 59 C. J. 759, par. 351.

The previous holdings of this Court in the decisions cited are, broadly speaking, in accord with the general authorities last cited.

An examination has been made of the many authorities cited by counsel for appellant, but when each is carefully studied and analyzed, the conclusion is inevitable that these cases have no influence on the case at bar.

The decree appealed from should be affirmed.

### On Petition for Rehearing

Whitfield, J.—The constitution of Florida provides that specific classes of legislative enactments shall be by general laws. Other enactments may be by special or local laws or by general laws when not otherwise required by the Constitution. General laws may operate throughout the State or within or upon permissible classifications of the subject and extent of the enactments.

General laws may be enacted without previous publication of notice thereof. Statutes that are special or local laws within the meaning and intent of the Constitution may legally be enacted only after the required notice of the proposed laws are published and proof thereof established in the Legislature, as required by the Constitution. See Secs. 20, 21, 22, 24 and 25, Art. III. See also Sec. 4, Art. VIII; Sec. 9, Art. XII.

A complete and all-embracing or excluding definition of a "general" law or a "special or local law" may not be precisely prescribed; but all practical purposes may reasonably be served by an adjudication interpreting the law, predicated upon the particular facts and legislative purposes as they are duly ascertained and determined in each litigated case. See Givens v. County of Hillsborough, 46 Fla. 502, 35 So. 88; Anderson v. B. P. I., 102 Fla. 695, 136 So. 334.

A statute may be a general law though it is applicable to, or operates in, only a portion of the State, when that portion of the State is designated or identified by a permissible classification having reference to human population within governmental units, or other appropriate distinguishing means of identifying the subject or object or area of the classification for statutory regulation; provided the classification as made has a reasonable and practical basis in differences in conditions, situations or other practical matters affecting the subject matter of the legislation and the classification. Arbitrary classifications that in effect have no reasonable and practical basis for the *local* application of the statutory regulations and serve only to evade the organic requirements that are preliminary to the enactment of local laws, thereby indirectly violating Section 21 of Article III of the Constitution as amended in 1928 and 1938, are not permissible.

In Florida three of the counties have more than 100,000 population, by the 1935 national census. The other counties have much smaller populations, though some of the latter class have relatively large and rapidly increasing populations, giving a range of legislative classification and judgment in enacting statutory regulations. Prior to the amendment in 1928 to Section 21, Article III, of the Florida Constitution, the publication of notice of proposed local or special laws was not required by the Constitution to be estab-

lished in the legislative journals; and the courts did not inquire into the fact of publication. State *ex rel.* Buford v. Fearnside, 87 Fla. 349, 100 So. 256; Stockton v. Powell, 29 Fla. 1, 10 So. 688. The result was that classification statutes that could not be sustained as general laws, might prior to 1928 be operative as local or special laws that were not violative of some organic provision other than original Section 21, Article III. Since 1928 if a statute is not valid as a general law it cannot be valid as a local or special law unless notice of it was duly published and such publication duly established in the legislative journal, or unless a referendum is provided and made effective under the 1928 and 1938 amendments to Section 21, Article III, of the Constitution.

Classifications based upon population have been sustained where the basis is a division between counties of large population and those of smaller population when the subject regulated has a proper relation to such classification, the exact dividing line being left to the legislature in enacting the statute.

When classifications of counties for the enactment of general laws are based *solely* upon population *alone,* there should be a fair relation of such population, as to size or otherwise, to the purpose of the enactment, that justifies the particular legislative regulations for the county or counties as classified only by population. This is so even though the stated population has reference to each succeeding official census so that smaller counties reasonably may attain the required population by growth. In Florida it is not contemplated that the population in any county will decrease. A mere arbitrary classification of counties by population, to avoid the organic requirements for notice of proposed local laws or for other purposes, is not permitted by Sec-

tions 20 and 21, Article III, in making legislative classifications for statutory regulations by general laws.

While a reasonable scope of legislative judgment in making such classifications is recognized by the law, the validity of the classification with reference to the intendments and limitations of Sections 20 and 21, Article III, of the Constitution, is for judicial determination, within the bounds of judicial power as conferred by the Constitution. All reasonable doubts as to the validity of statutes under the Constitution should be resolved in favor of the statutes in proper deference to the coordinate powers of government that are vested in the three departments as defined by Articles II, III, IV and V, and other provisions of the Florida Constitution.

But the ultimate power and duty to interpret statutes with reference to organic requirements and limitations cannot legally be evaded by the courts. If a court or judge having the authority to decide is clearly of the opinion that a statutory enactment is invalid, it should be so adjudged. When a statutory enactment is duly adjudged to be in conflict with controlling provisions of the Constitution, State or National, the Constitution by its own inherent force renders such adjudged illegal enactments inoperative.

Where the classification of counties by population alone is *appropriate* and *permissible* for particular statutory enactments of general laws to operate within the area as classified, such classes may properly include all of the counties having the largest population, Sparkman v. County Budget Commission, 103 Fla. 242, 137 So. 809, or the county with the largest population, State *ex rel.* Buford v. Daniel, 87 Fla. 270, 99 So. 804. The classifications having reference to succeeding official censuses in each of such cases, one or more of the smaller counties may reasonably be expected to grow into the upper class merely by increase of population.

But for it to be permissible to classify to itself the county having the second largest population, as in this case, there should be other considerations than mere size of population to distinguish it from other counties. Such other considerations may be duly shown or may be conceived by the court by virtue of judicial notice of patent, well known facts. See Beasley v. Cahoon, 109 Fla. 106, 147 So. 288; County of Manatee v. Davidson, 132 Fla. 295, 181 So. 889. See also State *ex rel.* v. Stoutamire, 131 Fla. 698, 179 So. 730.

In this case Duval County, then having 175,209 population, and Dade County, then having 180,998 population, each contains a growing seaport city. A civil service system is as appropriate in one county as in the other when classified by population alone, and no other distinguishing features in the county to which the enactment relates are suggested or conceived to justify a general rather than a local law for the smaller county on the subject regulated in this case.

In State *ex rel.* v. Williams, 112 Fla. 734, 150 So. 804, the classification by population covered two counties and the statutory enactment had relation not to establishing a civil service system, as in this case, but to then existing county fiscal matters, and the classification might have also had a basis in then existing conditions peculiar to such fiscal affairs in the two counties. However, the last cited case is not a precedent, the Court being evenly divided in opinion as to the legality of the classification of counties with not less than 43,000 population and not more than 53,000 population. See also The Soviet Co. v. State *ex rel.,* 136 Fla. 179, 186 So. 671; Latham v. Hawkins, 121 Fla. 324, 163 So. 709.

Of the sixty-seven counties in the State of Florida, the three largest in population, by the State census of 1935, are

Dade 180,998, Duval 175,204, Hillsborough 159,208. The next largest county in population is Polk having 82,184. Dade, Duval and Hillsborough Counties each contain one of the three largest cities in the State.

Chapter 19180, Acts of 1939, enacts the creation of a Civil Service Commission in all counties in the State having a population of not less than 165,000 and not more than 180,000, which classification solely by population identifies a single county, Duval, which had a numerical population of 174,204, while Hillsborough County had 159,208 population, and Dade County had 180,998 population. This is not a classification by dividing the county having the largest population from all counties having less population, for appropriate legislation, as in State ex rel. Buford v. Daniel, 87 Fla. 270, 99 So. 804.

In this case the circuit judge had doubts as to the validity of the classification as made, and properly resolved such doubts in favor of the legislative enactment. On appeal the majority of the Justices of this Court, after due consideration, not only entertained doubt as to the validity of the classification, but are affirmatively of the opinion that the classification by population alone, without any other cognate basis or consideration being suggested or conceived, is definitely contrary to the intendments and limitations of Section 20, and amended Section 21, Article III of the Florida Constitution, in that the statute applied only to one county, and it does not appear that because that county has a population of not less than 165,000 and not more than 180,000, that alone is a reasonable basis of classification for a general law creating a civil service system in one county when there was then another county with a little less population, and one county with a little greater population, but not within the outside limits stated. The necessary result is that the classification as made in this case has no reason-

able basis in differences of conditions affected, by population alone upon which the statute is to operate, so as to justify the enactment of a classified general law without published notice, rather than a local law, notice of which is required by the Constitution to be established in the legislature before its enactment.

Rehearing denied.

TERRELL, C. J., BROWN, BUFORD and THOMAS, J. J., concur.

CHAPMAN, J., dissents.