146

## CITY OF ST. PETERSBURG v. PFEIFFER.

Circuit Court, Pinellas County.

October 9, 1953.

Lewis T. Wray, Harry I. Young, Frank McDevitt and Adrian S. Bacon, all of St. Petersburg, for plaintiff.

Herman W. Goldner and Denny J. McGarry of Goldner, Cramer & Smith, St. Petersburg, for defendant.

Clair A. Davis, Clearwater, as State Attorney and for the Attorney General.

Ben Shepard, Miami Beach City Attorney, amicus curiae.

Worth Dexter, Jr., Sarasota City Attorney, amicus curiae.

JOHN DICKINSON, Circuit Judge.

In this case the city of St. Petersburg, a municipal corporation, filed its complaint seeking a declaratory decree as to its rights and

duties under chapter 28,099, Laws of Florida 1953.[1] The defendant is Frank E. Pfeiffer who is a member of the fire department of the city of St. Petersburg. The city attorneys of the cities of Miami Beach and Sarasota were permitted to intervene as amici curiae.

---

[1]Section 1. Chapter 23795, Laws of Florida, 1947, is hereby repealed.

Section 2. Firemen of municipalities with a population of 15,000 or more, according to the most recent Federal census, shall not be required to remain on duty more than one hundred twenty hours in any two consecutive calendar weeks. The hours during which each shift is to be on duty shall be so divided, either by the shifts alternating from night to day, or otherwise, that neither shift shall be discriminated against in the number of hours during which the members thereof are required to be on duty; provided, however, that firemen may be required to remain on duty twenty-four hours per day, but only on alternate days, except when a fire emergency exists, provided, further, that the city of Gainesville shall be exempt from the provisions of this act, provided, further, that the city of Coral Gables shall be exempt from the provisions of this act. Provided however that within all municipalities in this state having a population of not less than 30,500 and not more than 35,000 inhabitants according to the latest official census, firemen of such municipalities may be required to remain on duty up to but not exceeding one hundred forty four hours in any two consecutive calendar weeks.

Section 3. Nothing in this act shall be construed as repealing any of the provisions of the laws or ordinances of the cities affected allowing vacation for firemen.

Section 4. The provisions of this Act shall not be applicable to cities in Duval County.

Section 4A. This act shall not be applicable in counties having a population of not less than sixty nor more than eighty thousand nor less than 114,750 nor more than 122,000 according to the last preceding federal census.

Section 5. This act shall not apply to the City of Tallahassee nor the fire department of said city.

Section 5A. This act shall not apply to the city of Tampa.

Section 6. This act shall not be applicable to counties having a population of not less than 34,650, nor more than 36,000 inhabitants according to latest official census.

Section 7. The provisions of this Act shall not be applicable to cities or municipalities located in counties having a population according to the 1950 Federal Census of not less than 80,000 and not more than 100,000.

Section 8. All laws or parts of laws in conflict herewith are hereby repealed.

Section 9. This act shall take effect immediately upon becoming a law.

Approved by the Governor June 2, 1953.

Filed in Office Secretary of the State June 2, 1953.

The contention of the city is that the Act is purely a local Act, applicable to certain localities *only*, passed under the guise of a general Act—and that it thus is unconstitutional and void as being violative of sections 20 and 21 of article 3 of the Florida constitution. The defense is that the Act is constitutional as being in the valid exercise of legislative powers because it classifies the various cities and towns covered by the Act in accordance with constitutional requirements.

The matter was ably argued by counsel for the respective parties, the amici curiae, and the State Attorney of this circuit representing the Attorney General of Florida.

Chapter 28,099, Laws of Florida 1953, the Act in question, provides generally that in municipalities having a population of 15,000 or more the maximum of working hours of firemen shall be 120 hours in any two calendar weeks, except that in cities in counties having a population of not less than 30,500 and not more than 35,000 the firemen may be required to be on duty 144 hours in any two week period. This exception covers only the city of Lakeland in Polk County. There are also exempted from the Act specifically by name the cities of Coral Gables, Tallahassee, Gainesville and Tampa. All cities in Duval County are likewise exempted. In addition to the cities exempted specifically by name, cities in the following counties are exempted because they are in the following population brackets—(1) 60,000 to 80,000, (2) 114,650 to 122,000, (3) 34,650 to 36,000, (4) 80,000 to 100,000. Of this latter exempt class the city of Daytona Beach is in class 1, Orlando is in class 2, and Ft. Lauderdale is in class 4—there appear to be none in class 3. Thus while the firemen in Lakeland work 144 hours in a two week period, firemen in Coral Gables, Tallahassee, Gainesville, Tampa, Jacksonville, Daytona Beach, Ft. Lauderdale and Orlando are exempt, and firemen in the cities of Miami, St. Petersburg, Miami Beach, Pensacola, West Palm Beach, Key West, Panama City, Hialeah, Sarasota, and Clearwater work 120 hours. These nineteen cities are the only ones in the state that have a population of more than 15,000 as has been conceded by counsel in this case. Of these nineteen cities, eight are exempt, ten non-exempt, and in one the firemen must work longer hours, 144 to 120 as prescribed. The total population of the cities of over 15,000 population and thus potentially included by the Act is 1,138,203. Of this total 585,337 in population are covered by the Act, 522,015 in population are exempt and in the city of Lakeland with 30,851 population, the firemen must work longer hours. So much for the general outline and review of the Act.

Section 20, article 3 of the constitution of Florida provides that the legislature shall not pass special or local laws in the cases enumerated therein, none of which are applicable here. Section 21 of article 3 provides that in all cases enumerated in section 20 all laws shall be general and of uniform operation throughout the state unless a special or local notice of intention to seek passage thereof shall have been advertised as required therein, or unless there shall be attached to the Act as passed a referendum clause for submission of the Act to a vote of the people of the area affected.

It is conceded by all parties that no notice of the application for the passage of this Act was ever published in any newspaper anywhere in the state and that there is no referendum clause attached to the Act as required by section 21 of article 3 of the constitution. Thus for it to be a valid legislative enactment it must be *uniform and general in application throughout the state.*

Our Supreme Court has held in many cases that a statute may be a general law, though it is applicable to, or operates in, only a portion of the state, when that portion of the state is designated or identified by a permissible classification, having reference to human population within governmental units, or other appropriate distinguishing means of identifying the subject or object or area of the classification for statutory regulation—provided the classification as made has a reasonable basis in differences in conditions, situations, or other practical matters affecting the subject matter of the legislation and the classification. Arbitrary classifications that in effect have no reasonable or practical basis for the local application of the statutory regulations and serve only to evade the organic requirements that are preliminary to the enactment of local laws—thereby indirectly violating section 21 of article 3 of the constitution as amended in 1928 and 1938—are not permissible. Waybright v. Duval County (Fla.), 196 So. 430.

In other words, there must be some reasonable basis for the classification for the matters sought to be regulated. This may be by population, or geographical or some such reasonable relationship. This Act is neither—certainly not geographical when the contiguous cities of Hialeah and Coral Gables are one exempt and one non-exempt. Certainly it is not by population when some with more population are exempt and some with less are included, and some with more population are excluded and those with less, exempt.

The legislature started off on this Act on a valid tack. It classified all cities above 15,000 as being subject to regulation but then it went further and in my opinion defeated its validity by exempting eight of the nineteen cities in the class, in the ninth creating more hours of work while the remaining ten were subject to the Act.

Classifications of legislation in law must always rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed and can never be made arbitrarily and without any such basis. Anderson v. Board of Public Instruction (Fla.), 136 So. 334; Crandon v. Hazlett (Fla.), 26 So. 2d 638.

It is difficult for one to see any reasonable basis or reason for the classification as the Act finally was passed by the legislature. Firemen in Coral Gables, population 19,837, certainly have the same problems as those in the contiguous city of Hialeah, population 19,676, yet Coral Gables is exempt and Hialeah is included. Firemen in Tampa, population 124,681, are exempt, and those in St. Petersburg, population 96,738, are covered by the Act. So much for the geographical classification. It is just non-existent.

To dramatize it more clearly, it appears that of the cities initially designed to be covered by the Act (that is, over 15,000 in population) 55% are included therein. This includes the city of Lakeland which has approximately 2.7% of the population of this group of cities and in which the firemen receive special attention or treatment by being required to work 144 hours or 24 hours more than the general coverage of the Act. Deducting Lakeland's percentage from the 55% leaves 52.3% covered by the general 120 hour provisions of the Act. The cities excluded from the Act thus figure approximately 45% of the population group. Thus we arrive at the conclusion that 52.3% are covered, 45% are excluded and 2.7% work more hours. To me this does not mean uniformity of application throughout the state.

The Act contains no legislative findings or reasons for arriving at the classification of the cities in the manner in which it was finally passed by the legislature as is so common in regulatory acts of any kind. Hence we must assume that the legislature did not make any such findings.

An inspection of the Senate and House journals of the 1953 legislature, furnished the court by counsel for the defendant at the court's request, and admitted by other counsel, reveals that this bill was originally introduced by several members of the House in a general form as being applicable to all cities of over 15,000 in population and without the exceptions or exemptions herein noted. It was referred to the committee on municipal government. Later this bill was withdrawn and the Senate bill substituted therefor. This was likewise a general bill without the exceptions and exemptions. The bill as introduced was reported by the committee as a

valid bill. Then various representatives or senators proposed and had passed various amendments excluding this city and that, this population bracket and that, until it was passed by both houses in its present form. Thus it appears that there were no committee hearings as such on the bill as passed and hence no excuse or reason for the classification which appears to be arbitrary because not founded on rhyme or reason or on any practical basis. Counsel for defendant contend that various hearings were held by various individual legislators throughout the state on the merits of the bill, but in my opinion this is not and cannot be a substitute for public hearings by the legislature or a committee thereof so as to allow them to formulate reasons for the various classifications.

To carry the situation to its extreme, I can conceive of an Act in which the legislature would create a class of cities or counties of more than 15,000 and then exempt all but one city or county from the provisions thereof. That in my opinion would completely nullify the requirements of section 21 of article 3 of the constitution. Thus under the guise of creating a general class and then exempting all but one of the class the legislature could pass any sort of legislation without regard to constitutional provisions. That would be ridiculous and too absurd to allow, that would be an example of *degrees* of constitutionality, but there are no degrees of constitutionality—an Act is either constitutional or it is unconstitutional.

There is no severability clause in the Act, which means that if one section of the Act is unconstitutional, it is all unconstitutional.

I see no factual situation involved that would require the taking of testimony. It is conceded that the table of cities attached to the complaint and marked exempt and non-exempt is correct. Further this court can and does take judicial notice of the population and location of the various cities and towns in the state. The only conclusion I can reach is that the classification of the cities as the Act was finally passed by the legislature was arbitrary and capricious, thus rendering it unconstitutional and void.

Accordingly, it is ordered, adjudged and decreed that chapter 28,099, Laws of Florida 1953, is unconstitutional and void as being arbitrary and unreasonable and not being uniform throughout the state, and is in violation of sections 20 and 21 of article 3 of the constitution of Florida, there having been no referendum clause attached thereto, and that the plaintiff city of St. Petersburg is not required to comply with the provisions of said Act. The relief by declaratory decree sought in the defendant's counterclaim is denied.