C. H. CRANDON, HUGH PETERS, N. P. LOWREY, PRESTON B. BIRD, VAL C. CLEARY, as and constituting the members of the Board of County Commissioners of Dade County, Florida, v. W. IRA HAZLETT.

26 So. (2nd) 638         January Term, 1946
May 31, 1946·          En Banc
Rehearing denied June 21, 1946

576

· *Hudson & Cason, Francis G. Rearick* and *Park H. Campbell,* for appellants.

*L. L. Robinson,* for appellee.

BROWN, J.:

The appellee, a resident and taxpayer of Dade County, Florida, and also the qualified and acting Probation Officer of the Juvenile and Domestic Relations Court of Dade County, filed a bill in the Circuit Court of that County in which it was alleged that Chapter 23053, Acts of 1945, is violative of the constitution of Florida in several particulars, set out in the bill, in which he prays the court to decree said act unconstitutional and to enjoin the Board of County Commissioners of Dade County from attempting to create a County Board of Visitors, pursuant to said act, and from interfering with the performance of the duties and powers of the County Board of Visitors of Dade County, Florida, created and appointed pursuant to the provisions of Section 416.07 of the Florida Statutes of 1941, and from disbursing any public funds pursuant to the provisions of said Chapter 23053, or from exercising any rights or powers thereunder, and from seeking to control the management of the internal affairs of any children's detention home or school established by the county. Motion to dismiss the bill was denied, whereupon the defendant filed an answer denying the allegations of the bill attacking the constitutionality of the statute, and taking issue with certain factual allegations of the bill with reference to attempted usurpations of power.

On motion for decree on bill and answer, the court granted said motion and declared said Chapter 23053 of the Acts of

1945 to be unconstitutional, null and void, as being in conflict with certain provisions of the constitution of Florida as alleged and set forth in the bill of complaint, and also restrained the defendants from attempting to create a Board of Visitors thereunder and from interfering in any manner with the performance of the duties and authority of the County Board of Visitors of Dade County as provided and set forth under Sections 416.06, 416.07 and 416.08, Florida Statutes 1941 annotated, which the Court declared to be unrepealed and in full force and effect. The defendants, constituting the Board of County Commissioners, were also enjoined from disbursing any monies pursuant to the provisions of said Chapter 23053 or from exerting any authority thereunder.

The title of the act is question, Chapter 23053, reads as follows:

"An Act Relating to County Board of Visitors in Each County having a population of More Than 260,000 According to the Last Federal Census and Having a Juvenile and Domestic Relations Court; Providing for the Members, Method of Appointment, Term of Office, Compensation and Duties of Such Board of Visitors; Abolishing Board of Visitors Now in Existence in Such Counties and Vesting in the Board of County Commissioners of Each Such County the Powers Exercised by County Board of Visitors so Abolished."

The body of the Act, omitting the enacting clause, reads as follows:

"Section 1. In each county of the State of Florida having a population of more than 260,000 according to the last Federal Census and having a Juvenile and Domestic Relations Court, the Board of County Commissioners is hereby authorized to create a County Board of Visitors to be composed of five members, one of whom shall be the Chairman of the Welfare Committee of such Board of County Commissioners, one of whom shall be the Probation Officer or an Assistant Probation Officer of the Juvenile and Domestic Relations Court of such county and three of whom shall be outstanding citizens of the county who may be nominated by the Judge of such Juvenile and Domestic Relations Court, but

who shall be appointed by such Board of County Commissioners. Each of the members of the County Board of Visitors shall hold office for four years from and after his or her appointment or until his or her successor shall be appointed for the remainder of the term of the one whose office may be vacated. The same conditions concerning the appointment of the one who shall have vacated his office shall pertain to the appointment of his successor. The members of said County Board of Visitors shall serve without compensation but shall be allowed their reasonable traveling expenses, to be approved and paid by the Board of County Commissioners.

"Section 2. It shall be the duty of said County Board of Visitors to visit, without previous notice, not less than four times a year, all persons, institutions, societies and associations, except State Institutions, receiving children pursuant to Chapter 416, Florida Statutes 1943, or any amendment thereof, or addition thereto, and to make to the Board of County Commissioners and to the Judge of the Juvenile and Domestic Relations Court of such county a report in writing after each such visit. Such report shall show conditions discovered and shall contain such recommendations as the County Board of Visitors may deem advisable. Such County Board of Visitors shall act in an advisory capacity only and shall have no powers or authority other than to make visits, reports and recommendations as hereinbefore set out.

"Section 3. Each County Board of Visitors in counties affected by this Act, that may be in existence on the date this Act becomes a law, is hereby abolished. The powers of such Board so abolished with regard to the control and management of the internal affairs of any detention home or school established by the Board of County. Commissioners, or otherwise, are hereby vested in the Board of County Commissioners of such county.

"Section 4. If any section, sentence, clause, phrase or word of this Act should be declared invalid or unconstitutional, such declaration shall not affect the validity of the remainder of this Act.

"Section 5. All laws and parts of laws in conflict herewith are hereby repealed.

"Section 6. This Act shall take effect upon becoming a law.

"Became a law without the Governor's approval.

"Filed in office Secretary of State June 11, 1945."

The bill alleges that the above act, while actually local and special in character, was passed by the Legislature as a general law, and was not advertised as a local or special act, nor does it contain any provision for the approval of the same by referendum.

The bill also alleges that the title of the act is defective, and not in compliance with Section 16, Article III, of the Constitution. We are not convinced, however, that the title is fatally defective, if the Act itself can be held valid.

Some of the allegations of the bill are as follows:

(From paragraph 8).

"Said act was passed and adopted by the Legislature of the State of Florida as a general law applicable only to Counties of the State of Florida with a population of more than 260,000, according to the last Federal Census, and having a Juvenile and Domestic Relations Court, which is and constitutes an unreasonable and arbitrary classification. That this court will take judicial notice that said act is applicable only to one County in the State of Florida, namely, Dade County, and that no condition, difference or distinction exists in Dade County, different from the same conditions affected by said act in counties of Florida of a different population.

"That Dade County is the only county in the State of Florida with a population of more than 260,000, according to the last Federal census and having a Juvenile and Domestic Relations Court, so that said act while passed and adopted as a general act, is in truth and in fact a local law which seeks to regulate the powers and duties of county officials. That this court will take judicial notice that said act relates to the control and supervision of county homes to which delinquent children may be committed by the Judge of the Juvenile Court, and that such homes, for a period of over thirty years, have been regulated in the State of Florida by statutes of state-wide application, which were passed and adopted as a general law by the Legislature of Florida in the

year 1915, namely, Chapter 6841, Laws of Florida, Acts of 1914, being Section 416.01, Fla. Stats. Ann.

"That the provisions of Chapter 416, Fla. Stats. Ann., likewise provide for the mutual operation of said detention homes on a state wide basis by counties of small population, and further provide for the co-operation by counties with such homes, with counties without such homes, so that, the lawful authorization for the establishment of such homes contemplate a state-wide uniform system for the operation, supervision and policy or said homes. That the statutory authority for the government of the Florida Industrial School for juveniles provides that juveniles of a certain age may not be accepted in said state institutions, unless and until, they have first spent a trial period in said County Detention Homes, all of which homes are operated by a County Board of Visitors, named by the Judge of the Juvenile Court, the statutes governing said Juvenile Court being of state wide application.

"Plaintiff further alleges that a delinquent child in law is the same in one county as in another county and that no reasonable classification exists for providing or requiring that juvenile delinquents in counties of large population shall be confined or committed to a detention home of which the Board of County Commissioners, none of whom are required to be women, have complete charge, control and management, whereas, juvenile delinquents committed by a juvenile court of a county of smaller population are required to be confined or committed to a detention home managed by a Board of Visitors, at least three of whom shall be women, appointed by a judge of the Juvenile Court. That this court will take judicial notice that the financial affairs of said detention homes are already vested in the County Commissioners, and that said Board of Visitors have supervision only as to matters of welfare, and the welfare of children, which is of paramount interest and importance, and that in counties of large populations said County Commissioners have a greater responsibility, and more duties to perform, with less time to give adequate consideration to a detention home than a group or committee of citizens, who receive no compensation for

their services, and who are appointed by the Judge of the Juvenile Court as a County Board of Visitors primarily interested in child welfare, 'and to include at least three women and appointed regardless of politics,' and that the greater the population of a county increases, the less reasonable would become a classification vesting the management of a detention home in the County Commissioners of such county, rather than in a Board of Visitors, which has properly functioned for a period of more than thirty years, and which is abolished by said act.

(From paragraph 9).

"That said act provides that one of the members of said Board of Visitors to be created by said County Commissioners shall be the 'Chairman of the Welfare Committee of said Board of County Commissioners.' That there is no office or officer created by law known as the 'Chairman of the Welfare Committee of the Board of County Commissioners,' nor any person authorized by law to occupy the office of 'Chairman of the Welfare Committee of the Board of County Commissioners,' or to administer or perform the duties of such purported office. That said act wholly fails to prescribe the procedure in law for the selection of said purported officer or the members of said welfare committee, nor does said act prescribe the qualifications of the Chairman and members of said welfare committee, their terms of office, or who shall constitute said committee, or the duties and functions of such Chairman and the members of said welfare committee; that under statutes prescribing legal powers of County Commissioners found in Sections 125.01 and 125.32, Fla. State., Ann., only a Chairman and Vice Chairman of County Commissioners may be chosen which does not include the right to choose any chairman of any welfare committee."

In reply to the allegations of paragraph 9 of the bill, the answer alleges that:

"There is a committee of the Board of County Commissioners of Dade County known and recognized by said Board and by the public as the Welfare Committee; that one of the members of said committee has been selected and is known and recognized by said Board and by the public as the Chair-

man of the Welfare Committee of the Board of County Commissioners of said county; and these defendants are informed and believe, and upon such information and belief allege the fact to be, that each other Board of County Commissioners in the respective counties in the State of Florida, and particularly the counties in the larger population brackets, has a committee known and recognized by the respective boards and the public as the Welfare Committee, with a member thereof known and recognized by the respective boards and the public as the Chairman thereof."

While we agree with most of the allegations of the bill going to show that the classification by which the Legislature attempted to make this local act a general law is an unreasonable and arbitrary classification, we do not think it necessary for us to pass upon the validity of that provision in the act which states that one of the five members of the County Board of Visitors shall be "the chairman of the Welfare Committee of such Board of County Commissioners," or to hold that it is per se invalid. While neither the Welfare Committee nor the Chairman of said committee are officers created by law, the legislature will be presumed to have known that the Board of County Commissioners had appointed a Welfare Committee and that such committee had a Chairman, as alleged in the answer. It is true that Section 8 of Article V of the Constitution provides that the powers and duties of County Commissioners shall be prescribed by law. They have no powers other than those expressly vested in them by statute, or that must be necessarily implied to carry into effect the powers thus expressly vested, and we have frequently held that their governmental powers cannot be delegated. While the County Commissioners may voluntarily appoint advisory committees, such as a Welfare Committee and a Chairman thereof, to aid them in some advisory capacity, such as to gather information for the Commissioners and offer them their advance with reference thereto, the County Commissioners are not expressly compelled or authorized by law to appoint such a committee as the Welfare Committee, and therefore such a committee and its chairman have no legal or official status and did not have when this act was

adopted. See Section 27 of Article III of the Constitution, and Dade County v. State, 95 Fla. 465, 116 So. 72. The present act does not create such a committee nor define its powers or duties, nor the method of the selection of its chairman. The act merely assumed that as a matter of fact the County Commissioners of Dade County already had in existence such a committee, appointed by them, and that such committee had a chairman, and the act merely provided that one of the five members of the County Board of Visitors, which the act attempts to authorize the County Commissioners to create, shall be the Chairman of the Welfare Committee of such Board of County Commissioners. If the act were otherwise valid we seriously doubt that this provision would invalidate it, or that it is in conflict with the opinion of this Court in State v. Fowler, 94 Fla. 742, 114 So. 435. In that case the opinion of the Court, by Mr. Justice BUFORD, was unanimously concurred in by all the members of the Court. It is true that if the act here in question could be upheld as a valid act, it would impliedly compel the County Commissioners to continue to have a Welfare Committee with a Chairman of the same general character and duties as the Committee which the County Commissioners had at the time the act was passed, although such duties are not defined in the present act nor in any statute of Florida which has been brought to our attention. This does raise a somewhat close and unusual question, and one which it is really not necessary for us to rule upon here, because, if invalid, the words "one of whom shall be the Chairman of the Welfare Committee of such Board of County Commissioners," could be stricken from the act without in and of itself invalidating the same. Appellees contend in this connection that the act, for the reasons alleged, is not complete within itself. See Pridgen v. Sweat, 125 Fla. 598, 170 So. 653; Robbins v. Webb's Cutrate Drug Co., 153 Fla. 822, 16 So. (2nd) 121.

The Court speaking through Mr. Justice TERRELL, in the case of State v. Armstrong, 127 Fla. 170, 172 So. 861, had this to say:

"We have also held that the vice of constitutional invalidity must inhere in the very terms of the title or body of

the Act. If this cannot be made to appear from argument deduced from its terms or from matters of which the Court can take judicial knowledge, we will not go beyond the face of the Act to seek grounds for holding it invalid."

It follows from this statement of the law that neither parol evidence, not the minutes of the Board of County Commissioners, nor any evidence aliunde the language of the act itself, can be resorted to in order to show what were or are the character, functions or duties of said Welfare Committee or its Chairman, none of which are set forth in this or any other statute.

Section 3 of the Act provides that: "Each County Board of Visitors in counties affected by this act, that may be in existence on the date this act becomes a law, is hereby abolished." This sentence clearly shows this to be purely a local act, applicable only to Dade County, either presently or prospectively, because it only abolishes county boards of visitors in counties having a population of more than 260,000 and a Juvenile and Domestic Relation Court, which boards were in existence *"on the date this act becomes a law,"* which, if it ever became a law for any perpose, was on June 11, 1945. There was only one county of 260,000 which had such a board on that date, and that was Dade County. The next clause provides that: "The powers of such Board so abolished with regard to the control and management of the internal affairs of any detention home or school established by the Board of County Commissioners, or otherwise, are hereby vested in the Board of County Commissioners of such County." This sentence is so definitely tied on to the preceding sentence that it could only apply where a county board of visitors which was in existence on June 11, 1945, was abolished as provided in the first sentence of said section 3. So by its very terms this act, attempted to be passed as a general law, could only be reasonably applied at anytime, to Dade County.

The constitution of 1868 prohibited the passage of local and special laws in certain instances. Our former constitutions had mentioned certain matters with reference to which special legislation could not be resorted to. The constitution of 1885, while removing restrictions on special legislation

with regard to municipal matters, strengthened and widened the scope of our previous constitutions with regard to prohibiting all local legislation as to certain enumerated matters. Section 20 of Article III of the Constitution of 1885, containing these prohibitions, provided that: "The legislature shall not pass special or local laws in any of the following enumerated cases: that is to say, regulating the jurisdiction and duties of any class of officers, except municipal officers," etc.

Section 21, Article III, provided that: "In all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted in that section, the Legislature may pass special or local laws: provided that no local or special bill shall be passed unless notice of the intention to apply therefor shall have been published in the localities where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least sixty days prior to the introduction into the Legislature of such bill, and in the manner to be provided by law. The evidence that such notice had been published shall be established in the Legislature before such bill shall be passed."

But at the Jaunary term, 1892, this Court handed down an opinion and decision in the famous case of Stockton v. Powell, 29 Fla. 1, 10 So. 688. In that case it was held that the matter of ascertaining and deciding whether the required notice has been given, as provided in the above section of the Constitution, was exclusively a legislative function and duty, and that the passage of a special or local act is a legislative judgment that proper notice has been duly published and that the legal evidence thereof had been established in the Legislature before the bill was passed, and that the courts were concluded by such legislative judgment.

Following that decision, there was a growing number of special and local bills which were passed without any publication whatever of the required notice, and by 1925, this stream of local bills had widened into a river, and in response to strong public opinion a constitutional amendment was submitted to the people by the Legislature of 1927, which was

adopted in 1928. It required publication of notice for at least thirty days prior to the introduction into the legislature of all special and local bills, and that evidence that such notice had been published shall be established in the Legislature before such bill should be passed by having proof of publication attached to the proposed bill when introduced and an affidavit constituting such proof should be entered in full upon the journals of both houses; provided however that no such proof of publication should be required when such local or special law contained a provision to the effect that the same shall not become operative until ratified or approved by a majority of the qualified electors in an election called in the territory affected by such special or local law.

This section 21 was further strengthened by a constitutional amendment adopted in 1938 which further provided that the evidence that such notice had been published shall be filed or preserved with the bill in the office of the Secretary of State in such manner as the Legislature shall provide, and that the fact that such notice was established in the Legislature shall be recited upon the journals of both houses.

These efforts on the part of the people of the State to cure what was often referred to as the "local bill evil" by the adoption of the constitutional provisions above referred to, should be given all the force and effect which the language of such provisions express.

In 1923 the Legislature adopted a statute, as to which no notice had been published, creating a County Welfare Board in each county of Florida having a population of over one hundred thousand according to the last Federal census. At that time Duval County was the only county in the State which had such a population. The validity of this act was attacked in the case of State ex rel Buford, Attorney General, v. Daniel et al., 87 Fla. 270, 99 So. 804. In that case this Court speaking through Mr. Justice WHITFIELD, held that the act in question was not a special or local law for the reason that it was a law based upon a proper classification that was applicable throughout the State, in that "any county may acquire a population of over one hundred thousand though only one county may now be in that class," and that

the provision "according to the last Federal census" is progressive and has reference to each Federal census as it occurs. It was also held in that case that:

"Uniformity of operation throughout the State does not require universality of operation throughout the State. The former relates to similarity of conditions affecting subject or localities of the State that are appropriately classified. The latter relates to the whole and every part of the State."

The able opinion in the above case was concurred in by three members of the Court, one member concurred in the conclusion, and two members dissented. Mr. Justice ELLIS wrote a dissenting opinion, mainly on the classification question and Mr. Justice BROWNE also wrote a separate dissenting opinion on different grounds.

While the opinion in the above cited case was not concurred in by a majority of the Court, it has been quite generally followed since, but with some explanations and modifications.

In the case of Anderson v. Board of Public Instruction, 102 Fla. 695, 106 So. 334, this Court, speaking through Mr. Justice DAVIS called attention to the fact that classification in law is the grouping of things together because they agree with one another or in certain particulars, and differ from other things in those same particulars. It is true that in that case the population bracket was from 145,000 to 150,000, but the principles discussed are applicable to all of these population acts. In that case Mr. Justice DAVIS said:

"But when a classification is made, the question always is whether there is any reasonable ground for it, or whether it is only and simply arbitrary, based upon no real distinction and entirely unnatural. Classifications must always rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis."

The case of Waybright v. Duval County, 142 Fla. 875, 196 So. 430, involved the constitutionality of an act which endeavored to establish a plan for the creation and operation of a Civil Service Commission in counties having a population of

not less than 165,000 and not more than 180,000, according to the last Florida State census or any subsequent State or Federal census. Duval County was the only County that fell within the classification at that time. However, the question of a reasonable basis for the classification makes it applicable here. In that case this Court, speaking through Mr. Justice THOMAS, had this to say:

"The civil service scheme is of comparatively recent origin and is a progressive step in the government of public affairs. Why it should be adaptable or practical in a county of one hundred sixty-five or one hundred seventy-five thousand inhabitants and of a lesser value or usefulness in one of one hundred sixty or one hundred ninety thousand persons is so difficult for us to understand that we entertain a reasonable doubt of its validity. It is impracticable to draw a definite and distinct line of demarcation on one side of which some 'population statutes' may stand and others fall because of the variety of categories offered and subjects proposed but must in each case hark back to the original rule of reasonable relationship."

It may not be possible to lay down any rules, except those of a general character, for determining the basis of classification for legislative purposes. In the case of Seaboard Air Line Ry. Co. v. Simon, 56 Fla. 545, 47 So. 1001, it was held that:

"The classification adopted should have some just relation to, or reasonable basis in, essential differences of conditions and circumstances with reference to the subject regulated, and should not be merely arbitrary; and all similarly situated or having similar legal duties and obligations in regard to the subject regulated, should be included in one class, at least where there are no practical differences that are sufficient to legally warrant a further or special classification in the interest of the general welfare."

The effect of our decisions involving these many "population acts" which have come before us is that where there is a substantial difference in population, and the classification on a population basis is reasonably related to the purposes to be effected, based on the differences in population which forms

the basis thereof, and is not merely arbitrary, it is a general law, even though at the time it may be applicable to only one political subdivision of the State; but if the subject matter of the act and the public purpose to be effectuated thereby bear no reasonable relation to the difference in population upon which it rests, even though it be passed under the guise of a general law, it is in fact a local law; and if no notice has been published, and it contains no referendum clause, it is then a plain violation of section 20 and 21 of Article III of our Constitution and cannot be upheld. The act before us cannot stand this test. We cannot find any rational basis for the classification it presents.

The operation of detention homes under a County "Board of Visitors" appointed by the Judge of the Juvenile Court is a part of a state-wide child welfare program as set forth in Chapter 416 of Fla. Stats. 1941 Ann. Section 416.07 of that Chapter provides that: "The Judge of the Juvenile Courts in and for each County of the State, shall, by an order entered in the minutes of the Court, appoint seven discreet citizens of good moral character, without regard to politics, three of whom shall be women, to be known as the County Board of Visitors," etc. The duties of such board are set forth in Sections 416.07 and 416.08 which form a part of the Chapter above referred to.

We cannot imagine any reason why the Judge of the Juvenile and Domestic Relation Court of Dade County, or of any of the larger counties of the State, may not appoint just as competent a Visiting Board to oversee the operations of the detention home for children and to make reports to the Judge as is now being done in the smaller counties of the State under the general law above referred to. Surely it cannot be said that the County Commissioners in the larger counties of the State are any better child welfare minded than in the smaller counties. Nor can we see any reason why the Judge of the Juvenile Court in the smaller counties should have the power to name a board of visitors and yet such right should be denied to a similar Judge or Judges in the larger counties. Indeed we might take judicial notice of the fact that the County Commissioners in the larger counties of the

State have more business to attend to, and less time to work out the problems of the management of children's detention homes than in the smaller counties. Especially is this true of the County Commissioners of Dade County, which, if we remember correctly, in addition to their regular duties, have had imposed upon them by law the duty of zoning the county, the establishment and operation of a water conservation system in the county, and they have also been constituted by statute as the Port authority of said county; all of which, while being a tribute to the confidence which the people of Dade County have in their County Commissioners, leaves them less time to manage the internal affairs of a children's detention home than like officials in counties of smaller population.

For the reasons above pointed out we must hold the act here in question to be unconstitutional and void, as was held by the Chancellor below.

Affirmed.

CHAPMAN, C. J., TERRELL, BUFORD, THOMAS, ADAMS and SEBRNG, JJ., concur.