66 So.2d 42 (1953)
In re ROUSE et al.
HOPKINS et al.
v.
ROUSE.
Supreme Court of Florida, en Banc.
June 2, 1953.
*43 Hoffman, Kemper & Johnson, Miami, for petitioners.
Ruff & Ready, Miami, for respondent.
RedFearn & Ferrell, Miami, as amicus curiae.
ROBERTS, Chief Justice.
We here review, on certiorari, an order of the Circuit Court of Dade County quashing and setting aside an order of the Juvenile and Domestic Relations Court of that county respecting the custody of minor children resident therein. A chronology of the events culminating in the order complained of is as follows:
The petitioner, Martha Welsh Hopkins, is the mother of the minor children and the respondent, John Luke Rouse, is the father. These parties were divorced by a final decree of the Circuit Court of Dade County in June 1950, which decree also awarded the custody of the children to the father. The mother subsequently married the petitioner, James Hopkins; and on May 7, 1951, she filed in the Circuit Court of Dade County a petition for modification of the final decree so as to have the custody of the children transferred to her. By an order dated May 9, 1951, the Chancellor, of his own motion, transferred the proceedings to the Dade County Juvenile and Domestic Court. No appeal was taken by the father from this order of transferral.
It appears that, in the proceedings had before the judge of the Juvenile Court, counsel for the father made an oral motion attacking the constitutionality of the Act establishing the court and questioning its jurisdiction of the cause. This motion was denied, and the judge entered his order denying the mother's petition, but without prejudice to her applying within a reasonable length of time thereafter, upon a showing of changed conditions, for a modification of the custody provisions of the decree. This order was entered on November 2, 1951.
On May 15, 1952, the mother filed in the Juvenile Court a petition seeking to have the custody of the children awarded to her during the summer months. The judge granted such petition by an order dated May 23, 1952. In this latter proceeding, no attack was made by the father, either orally or by written pleading, on the jurisdiction of the Juvenile Court.
The Juvenile Court order of May 23, 1952, was reviewed by the Circuit Court of Dade County on the father's petition for the writ of certiorari; and, on August 8, 1952, an "Opinion and Order" was entered by the judge of said court, in which it was held that the Juvenile Court had no jurisdiction to grant the order of May 23, 1952, which order was thereupon set aside. It is this order of August 8, 1952, which we here review.
The Juvenile and Domestic Relations Court of Dade County (herein referred to as the "Juvenile Court"), as presently established, was authorized by Chapter 27,000, Laws of Florida, Acts of 1951, which is a population act applicable only to counties having a population of over 350,000. The principal questions here are: (1) Is such act valid as a general act of local application, *44 within the meaning of sections 20 and 21 of Article III of our Constitution, F.S.A.; and (2) If valid, did the act, by its terms, confer jurisdiction upon the Juvenile Court in proceedings of this nature?
Chapter 27,000, supra, was enacted by the Legislature pursuant to the constitutional authority granted by section 50 of Article V of the Constitution, adopted at the general election in 1950. By this constitutional amendment, it was provided that
"The Legislature shall have power to create and establish Juvenile Courts in such County or Counties or Districts within the State as it may deem proper, and to define the jurisdiction and powers of such courts and the officers thereof, and to vest in such courts exclusive original jurisdiction of all or any criminal cases where minors under any age specified by the Legislature from time to time are accused, including the right to define any or all offenses committed by any such persons as acts of delinquency instead of crimes; * * *."
It is here contended that Chapter 27000 violates those provisions of the Constitution respecting the enactment of special or local laws, sections 20 and 21 of Article III. This contention cannot be sustained.
The Act is a "population act," applicable "in any of those counties of this State which now have, or may hereafter have, a population of over 350,000 * *." The yardstick to be applied in determining the validity of such Acts is stated in Waybright v. Duval County, 142 Fla. 875, 196 So. 430, 439, as follows:
"When classifications of counties for the enactment of general laws are based solely upon population alone, there should be a fair relation of such population, as to size or otherwise, to the purpose of the enactment, that justifies the particular legislative regulations for the county or counties as classified only by population. * * * A mere arbitrary classification of counties by population, to avoid the organic requirements for notice of proposed local laws or for other purposes, is not permitted by sections 20 and 21, Article III, in making legislative classifications for statutory regulations by general laws."
While there can be no doubt that the welfare of a child is just as important in the county of 350,000 population as it is in a county of 10,000 population, it is equally clear that the problem is not the same in the one county as in the other. This court can take judicial notice that in Dade County, which is the only county presently affected by the statute in question, the volume of divorce cases heard by the circuit judges in that judicial circuit is tremendous; and that in a large proportion of these cases, the custody and support of children is involved. The same thing can be said of the other large counties of this state, whose expected growth in population will soon bring them within the population bracket prescribed in Chapter 27000, supra.
In addition to the vast difference in the number of cases handled in the large and the small counties, it is also inescapable that the problems inherent in dealing with dependent children in a large urban area are more complex and difficult than in a small rural community.
The provisions of Chapter 27000 authorizing the various circuit judges in our larger counties to transfer all problems relating to the welfare of dependent children to a single court  where adequate investigation and supervision may be had by impartial probation officers of such court  is a wise and salutary one  one that is not arbitrary but, on the contrary, has been made necessary by, and is designed to dispose of, as fairly and expeditiously as possible, the large number of cases involving dependent children arising in such counties. There is "a fair relation of such population * * * to the purpose of the enactment * * *" and, as such, the statute is well within the rule of Waybright v. Duval County, supra.
The question then becomes: Did the Act confer jurisdiction upon the Juvenile Court in proceedings such as those involved in the instant case?
*45 Section 3 of Chapter 27000 provides in part as follows:
"* * * In addition to the jurisdiction, power and authority now existing, or that shall hereafter be conferred thereon as Juvenile Courts, such courts shall hereafter have and possess the additional jurisdiction, power and authority to receive, investigate, hear and determine complaints, render judgment, and make lawful and reasonable orders for the enforcement thereof, involving any of the following: * * * concerning the custody of any child present before the Court or residing in the county, when not in conflict with the jurisdiction assumed by any other court in such county, and to change such custody when deemed for the welfare of such child; * * *." (The emphasis is supplied.)
Section 9 of Chapter 27,000 provides that
"Whenever in any cause pending in any other Court in such County involving matters within the jurisdiction of the Juvenile and Domestic Relations Court, it may appear, in the furtherance of justice, for such cause to be transferred, and more appropriately considered and disposed of by the said Juvenile and Domestic Relations Court, the Judge of said Court in which said cause is pending, on his own motion * * * may summarily transfer said cause by appropriate written order to the Juvenile and Domestic Relations Court to be dealt with by said Court, under the provisions of this Act, in keeping with said order of transfer and the procedure of such Juvenile and Domestic Relations Court, which Court shall thereafter hear and determine said cause as though the same had been originally initiated in said Juvenile and Domestic Relations Court. * * *" (The emphasis is supplied.)
It is here contended that the above-quoted provisions of section 3 is applicable only when the minor children are either dependent or delinquent children. It is true that in that provision of section 3 giving to the Juvenile Court jurisdiction for the enforcement of custody or support decrees of other courts, the jurisdiction is expressly limited to those cases in which the child is "threatened with becoming dependent upon the public for support because of non-compliance with such decree or order, * * *"; but there is no such limitation upon the quoted provision of section 3. And, when considered in the light of the quoted provisions of section 9, supra, we think there can be no doubt that the Juvenile Court is given concurrent jurisdiction with the Circuit Court of cases involving child custody, regardless of the questions of dependency or delinquency.
Therefore, the only question here is whether the Juvenile Court assumed jurisdiction in conflict with that of any other court. And, clearly, it did not. Upon the presentation by the mother of her petition for modification of the decree, the Circuit Court, of its own motion, transferred the cause to the Juvenile Court  it yielded and abdicated its jurisdiction over the cause, as it was authorized to do by section 9 of the Act, quoted supra. Thus, the Juvenile Court had the power and authority to entertain the cause and to enter its order modifying the decree as to custody, as expressly provided by section 3, quoted supra.
For the reasons stated, certiorari is granted, the order of the Circuit Court, dated August 8, 1952, is quashed, and the order of the Juvenile Court of May 23, 1952, is reinstated, but without prejudice, of course to the father to re-apply upon a change of conditions for an order of modification.
TERRELL, SEBRING and DREW, JJ., concur.
THOMAS and MATHEWS, JJ., and WARREN, Associate Justice, dissent.
MATHEWS, Justice (dissenting).
In this case the facts which preceded this appeal are well stated in the order of the able Circuit Judge, reading as follows:
"On June 7, 1950, a Final Decree of divorce was entered in the Circuit Court of the Eleventh Judicial Circuit, *46 in and for Dade County, Florida, in Chancery, File No. 132777, in which John Luke Rouse was plaintiff and Martha Welsh Rouse was defendant.
"In this decree the custody of the two minor children was awarded to John Luke Rouse, with visitorial rights reserved to the mother, the defendant.
"On May 7, 1951, Martha Welsh Hopkins (formerly Martha Welsh Rouse. She had in the meantime become the wife of James Hopkins.) filed in the said Chancery Court a Petition for Modification of the Decree, so far as the care and custody of the minor children was involved, and she asked that the children be awarded to her.
"On May 9, 1951, the Chancellor transferred by order to the Juvenile and Domestic Relations Court, in and for Dade County, Florida, the said Petition.
"On November 2, 1951, the Juvenile Court found that the plaintiff, the father, was a fit and proper person to have the care, custody, and control of the minor children, but at that time the mother, the defendant, was not a fit and proper person to have the care, custody, and control of the minor children; but the Court provided that the defendant should have the right, not earlier than six (6) months thereafter, to apply anew to the Juvenile Court for the care, custody, and control of the minor children.
"On May 23, 1952, the Juvenile Court entered an order granting the Petition for transferring the custody of the children from the father to the mother, and in this order the Court found that the mother was a fit and proper person to have the care and custody of the children. It did not find that the father had not properly cared for the children or that he was not a fit and proper person to have the care and custody of the children."
Within 10 days of the order of May 23, 1952, the respondent here filed notice of appeal. He then decided that appeal did not lie and filed a petition for certiorari. The petitioners here then filed a motion to quash the appeal and to dismiss the petition for certiorari. The Circuit Judge granted the motion to quash the appeal and denied the motion to dismiss the petition for certiorari.
The petitioners here took the position in the Circuit Court that since the respondent did not appeal from the order of the Chancellor transferring the question of custody to the Juvenile Court, he cannot now question the order, and further, that he did not question the authority of the Juvenile Court to award the custody of the children when the Juvenile Court first took jurisdiction, that he is too late in questioning the right of the Chancellor to transfer the cause to the Juvenile Court or the jurisdiction of the Juvenile Court to enter an order awarding the custody of the children. The petitioners here further urged before the Circuit Judge that the constitutionality of section 9, Chapter 27000, Acts of 1951, was not properly before the Circuit Court.
The record shows that the respondent objected to the trial of the cause before the Juvenile and Domestic Relations Court upon the grounds that:
"(1) The issues involved are one of an equitable jurisdiction recognized only by the Circuit Court, and that the statute reporting to confer jurisdiction of the cause on the Juvenile and Domestic Relations Court is unconstitutional.
"(2) That the Circuit Judge having assumed jurisdiction of this particular cause, and having ruled thereon, is without authority to divest himself of further jurisdiction in the matter."
The Juvenile Court Judge in the order of May 23, 1952, overruled this motion. The question of jurisdiction was raised before the judges of the Juvenile Court and the same question was presented to the Circuit Judge.
The Circuit Judge held that even if the question of jurisdiction had not been raised by the parties "it is the Courts province and duty to raise the question itself whenever it appears."
*47 When the question of jurisdiction of a court depends upon whether or not a statute attempting to confer such jurisdiction violates the organic law, it becomes the duty of the court to determine whether or not such statute conferring such jurisdiction is in violation of the organic law.
Section 50 of Article V was adopted as an amendment to the Constitution at the General Election in 1950. This section provides:
"The Legislature shall have power to create and establish Juvenile Courts in such County or Counties or Districts within the State as it may deem proper, and to define the jurisdiction and powers of such courts and the officers thereof, and to vest in such courts exclusive original jurisdiction of all or any criminal cases where minors under any age specified by the Legislature from time to time are accused, including the right to define any or all offenses committed by any such persons as acts of delinquency instead of crimes; to provide for the qualification, election or selection and appointment of judges, probation officers and such other officers and employees of such courts as the Legislature may determine, and to fix their compensation and terms of office; all in such manner, for such time, and according to such methods as the Legislature may prescribe and determine, without being limited therein by the provisions in this Constitution as to trial by jury in Sections 3 and 11 of the Declaration of Rights, as to use of the terms `prosecuting attorney' and `information' in Section 10 of the Declaration of Rights, as to election or appointment of officers in Section 27 of Article 3, as to jurisdiction of criminal cases in Sections 11, 17, 22 and 25 of Article 5, as to original jurisdiction of the interests of minors in Section 11 of Article 5, and as to style of process and prosecuting in the name of the State in Section 37 of Article 5, or other existing conflicting provisions of this Constitution."
It is urged by the petitioners that section 9 of Chapter 27000, Acts of 1951, violates the provisions of section 20 of Article III of the State Constitution because it attempts to regulate the jurisdiction, duties and practice of Courts and is a special or local law and any such law must be of general and uniform operation in the several counties of the State.
Under the provisions of Chapter 26880, Acts of 1951, F.S.A. § 39.01 et seq., which was the general law applicable to every county in the state where a Juvenile Court was established, jurisdiction was only granted over minor children in cases of dependency or delinquency or a threat thereof.
Under the provisions of section 3 of Chapter 27000, Acts of 1951, the Juvenile and Domestic Relations Court is given authority as follows:
"* * * concerning the custody of any child present before the Court or residing in the county, when not in conflict with the jurisdiction assumed by any other court in such county, and to change such custody when deemed for the welfare of such child; * * * concerning the enforcement of any decree or order of any other court involving alimony, support, legal separation, separate maintenance, or child custody, whenever any child or the parent thereof residing in such county, is reasonably involved and threatened with becoming dependent upon the public for support because of noncompliance with such decree or order, being given concurrent jurisdiction with other courts for such purpose in keeping with procedure as herein provided, primarily to protect the welfare of any such child by appropriate orders, but not to grant divorce or decide interests in real estate."
It will, therefore, be observed that even Chapter 27000 only gives jurisdiction, "whenever any child or the parent thereof * * * is reasonably involved and threatened with becoming dependent upon the public for support because of non-compliance with such decree or order". There was no contention made at any time in the proceeding that the children were involved *48 in and threatened with becoming dependent upon the public for support.
Section 9 of Chapter 27000 attempts to authorize the Circuit Court as a Chancery Court to transfer causes to the Juvenile and Domestic Relations Court and contains provisions different from those in the general law establishing and regulating juvenile courts. Chapter 26880, Laws of Florida 1951, is the same as Chapter 39, Florida Statutes 1951, F.S.A. Section 9 of Chapter 27000, Laws of Florida 1951, is as follows:
"Whenever in any cause pending in any other Court in such County involving matters within the jurisdiction of the Juvenile and Domestic Relations Court, it may appear, in the furtherance of justice, for such cause to be transferred, and more appropriately considered and disposed of by the said Juvenile and Domestic Relations Court, the Judge of said Court in which said cause is pending, on his own motion, or upon the motion of any party to the cause, including any prosecuting officer, or officer or employee of any other Court, may summarily transfer said cause by appropriate written order to the Juvenile and Domestic Relations Court to be dealt with by said Court, under the provisions of this Act, in keeping with said order of transfer and the procedure of such Juvenile and Domestic Relations Court, which Court shall thereafter hear and determine said cause as though the same had been originally initiated in said Juvenile and Domestic Relations Court. Upon such order of transfer being made, The Clerk of the respective Court from which the same is transferred, shall thereupon transmit all files and papers in the said cause to the said Clerk, or employee performing the duties of the Clerk of the Juvenile and Domestic Relations Court. All prosecuting officers, and all officers of the Court from which it is transferred, shall give full information and render full assistance as may be requested by the officers or employees of said Juvenile and Domestic Relations Court, in order to assist the further progress of said cause. Any costs which have accrued in any such cause before the same shall have been transferred to such Juvenile and Domestic Relations Court, based on actual papers filed and services rendered to date of such transfer, shall be due to and collectible by the said Clerk of said Court from which transfer is made, and such court transferring the same shall retain full jurisdiction to enforce the collection of the same as by law provided; but the payment of such accrued costs shall not be a condition precedent to the transfer of said cause to said Juvenile and Domestic Relations Court.
"Likewise, whenever the prosecuting officer of any other Court of the County in which such Juvenile and Domestic Relations Court is located, in the investigation or prosecution of any cause, may determine that the same may be more promptly and appropriately disposed of by the Juvenile and Domestic Relations Court, such officer may refer such cause to such court to be determined and disposed of in keeping with any jurisdiction herein conferred. Whenever, in the hearing or investigation of a cause in said juvenile and Domestic Relations Court, it shall be deemed by the Judge thereof, in the furtherance of justice, that the said cause or the offense therein involved, might be better heard and disposed of by some other Court of the County, having legal jurisdiction of any offense or duty involved therein, the said Court, on its own motion, or upon the motion or suggestion of any properly interested party, may, by proper order transfer same or jurisdiction thereof, to such other Court, including provision that all information and papers in the possession of the Court, touching such cause, if involving a criminal offense, shall be brought to the attention of the proper prosecuting officials of such other Court, as may have jurisdiction thereof, and such prosecuting *49 officers may thereafter proceed with the same as though the matter had been initiated in such other Court, to which thus transferred."
There can be no question that section 9 of Chapter 27000 contains provisions regulating the practices of courts which are different from the provisions of Chapter 26880, Laws of Florida 1951, and are not of uniform operation in similar courts established in other counties of the State.
It is likewise true that section 15 of Chapter 27000 regulating the appellate practice is different from the regulations contained in the General Law, Chapter 26880, Laws of Florida 1951, relating to the same subject and such provisions relating to appellate practice is not of uniform operation throughout the State.
The question is also raised that Chapter 27000 is a general law of local application and is not subject to the prohibitions contained in sections 20 and 21 of Article III of the State Constitution. A population law was alleged to be a general law of local application in the case of Waybright v. Duval County, 142 Fla. 875, 196 So. 430, 439. In that case the Court said:
"When classifications of counties for the enactment of general laws are based solely upon population alone, there should be a fair relation of such population, as to size or otherwise, to the purpose of the enactment, that justifies the particular legislative regulations for the county or counties as classified only by population. This is so even though the stated population has reference to each succeeding official census so that smaller counties reasonably may attain the required population by growth. In Florida it is not contemplated that the population in any county will decrease. A mere arbitrary classification of counties by population, to avoid the organic requirements for notice of proposed local laws or for other purposes, is not permitted by sections 20 and 21, Article III, in making legislative classifications for statutory regulations by general laws.
* * * * * *
"Where the classification of counties by population alone is appropriate and permissible for particular statutory enactments of general laws to operate within the area as classified, such classes may properly include all of the counties having the largest population, Sparkman v. County Budget Commission, 103 Fla. 242, 137 So. 809 or the county with the largest population, State ex rel. Buford v. Daniel, 87 Fla. 270, 99 So. 804. The classifications having reference to succeeding official censuses in each of such cases, one or more of the smaller counties may reasonably be expected to grow into the upper class merely by increase of population. But for it to be permissible to classify to itself the county having the second largest population, as in this case, there should be other considerations than mere size of population to distinguish it from other counties. Such other considerations may be duly shown or may be conceived by the court by virtue of judicial notice of patent, well known facts. See Beasley v. Cahoon, 109 Fla. 106, 147 So. 288; County of Manatee v. Davidson, 132 Fla. 295, 181 So. 889. See, also, State ex rel. [Gray] v. Stoutamire, 131 Fla. 698, 179 So. 730.
"In this case Duval county, then having 175,209 population, and Dade County, then having 180,998 population, each contains a growing seaport city. A civil service system is as appropriate in one county as in the other when classified by population alone, and no other distinguishing features in the county to which the enactment relates are suggested or conceived to justify a general rather than a local law for the smaller county on the subject regulated in this case."
In the case at bar the classification is based solely upon population. The welfare of a child is just as important in the county of 350,000 population as it is in a county of 10,000 population. The state is interested in the welfare of all children irrespective of the population of the counties. *50 No basis for a classification other than population has been shown.
In the case of Crandon v. Hazlett, 157 Fla. 574, 26 So.2d 638, 645, this Court had before it another statute based solely on population regulating the jurisdiction and duties of the Juvenile Court, and the officers thereof and regulating the practice in such courts different from that in the other 66 counties of the State, as provided for by general law. In an opinion by Mr. Justice Brown, concurred in by Justices Chapman, Terrell, Buford, Thomas, Adams, and Sebring, it was said:
"* * * if the subject matter of the act and the public purpose to be effectuated thereby bear no reasonable relation to the difference in population upon which it rests, even though it be passed under the guise of a general law, it is in fact a local law; * * *. The act before us cannot stand this test. We cannot find any rational basis for the classification it presents.
* * * * * *
"We cannot imagine any reason why the Judge of the Juvenile and Domestic Relations Court of Dade County, or of any of the larger counties of the State, may not appoint just as competent a Visiting Board to oversee the operations of the detention home for children and to make reports to the Judge as is now being done in the smaller counties of the State under the general law above referred to. Surely it cannot be said that the County Commissioners in the larger counties of the State are any better child welfare minded than in the smaller counties. Nor can we see any reason why the Judge of the Juvenile Court in the smaller counties should have the power to name a board of visitors and yet such right should be denied to a similar Judge or Judges in the larger counties. * * *" (Emphasis supplied.)
In the case of Crandon v. Hazlett, supra, the Court took judicial notice of the fact that the county commissioners in the larger counties of the State "have more business to attend to, and less time to work out the problems of the management of children's detention homes than in the smaller counties." We take judicial notice of the fact that Dade County has a population of approximately one-half million and is constantly increasing; that there is only one Juvenile Court and one Judge of such court; with no provision for the addition of other judges to such court as the population of the county increases or as the duties of the court may be increased by reason of the increase in population; that by reason of the tremendous increase in population, there are now ten judges of the Circuit Court in Dade County and that as the law now exists, provision is made for the addition of more Circuit Judges as the population increases. The act in question, that is, Chapter 27000, adds to the duties and the burdens of the Judge of the Juvenile Court and specially regulates the practice in such court and to that extent decreases the work and the duties of the Judges of the Circuit Court. The act does not provide for the more efficient handling of the particular type of cases in question by providing more help or more Judges for the Juvenile Court or by reducing the work and responsibilities of the Juvenile Court but it actually increases the duties, jurisdiction and responsibilities of such court. The facts of which we take judicial notice make more unreasonable and arbitrary the classification in this case based solely on population.
The case of State ex rel. York v. Beckham, 160 Fla. 810, 36 So.2d 769, 773, was decided before the amendment to the Constitution now appearing as section 50 of Article V was adopted. However, the same principles of law and construction apply to the present situation. In that case the mother of the child attempted to have the Juvenile Court for Dade County take jurisdiction of a bastardy proceeding and determine the paternity of the child and then make an appropriate order for the child's support and maintenance. The law in that case was the population act relating to all counties having a population of over 180,000 according to any preceding official census. The Act attempted to vest in such courts power and authority to receive, investigate, *51 hear and determine complaints, render judgment and make lawful and reasonable orders for the enforcement thereof involving "`investigations to determine the paternity of any child alleged to have been born out of wedlock for the purpose of providing support thereof, and to provide for the reasonable support of such child by any person found to be the parent thereof, or to provide for the care, support and disposition of such child as a dependent child, in case such child or either parent is residing within such county * *.'"
It was also pointed out by the Court that the Act in question, Chapter 19597, Acts of 1939, provided one practice in one court with reference to bastardy proceedings and in all other counties of the State such proceedings were controlled and determined by the several provisions of Chapter 742 F.S.A. The Court then said:
"It is established law that the Legislature is without power to enact or pass Special or Local laws `regulating the practice of courts of justice', but such laws shall be general and of uniform operation in the several counties of Florida. Section 20 of Article 3 of the Florida Constitution. Section 1 of Article 5 of the Florida Constitution gives the Legislature power to establish the Juvenile and Domestic Relations Court in Dade County, Florida.
* * * * * *
"The Constitution of Florida does not give exclusive jurisdiction of bastardy proceedings to any court provided for in Article 5 of our Constitution. It is therefore within the power of the Legislature under Section 1 of Article 5 of the Florida Constitution, as construed in State of Florida v. Sullivan, 95 Fla. 191, 116 So. 255, by statute to establish courts and prescribe their jurisdiction and this jurisdiction may be concurred or original with the jurisdiction of those courts recognized by the Constitution. The Act, however, cannot `regulate the practice of courts of justice', as inferred in Section 20 of Article 3 supra and as construed by this Court. Proceedings in bastardy under the Constitution and our decisions are required to be general and of uniform operation in each county of Florida."
See also Crandon v. Hazlett, 157 Fla. 574, 26 So.2d 638.
It, therefore, follows that Chapter 27000, Acts of 1951, is a special or local law and that sections 9 and 15 thereof violate the provisions of sections 20 and 21 of Article III of the State Constitution.
It is urged, however, that the passage of a local or special law regulating the jurisdiction of Juvenile Courts is permissible because of the following provisions of section 50 of Article V:
"* * * all in such manner, for such time, and according to such methods as the Legislature may prescribe and determine, without being limited therein by the provisions in this Constitution as to trial by jury in Sections 3 and 11 of the Declaration of Rights, as to use of the terms `prosecuting attorney' and `information' in Section 10 of the Declaration of Rights, as to election or appointment of officers in Section 27 of Article 3, as to jurisdiction of criminal cases in Sections 11, 17, 22 and 25 of Article 5, as to original jurisdiction of the interests of minors in Section 11 of Article 5, and as to style of process and prosecuting in the name of the State in Section 37 of Article 5, or other existing conflicting provisions of this Constitution."
Particular stress is placed upon the words "or other existing conflicting provisions of this Constitution". The words in question, "other existing conflicting provisions of this Constitution", refer to such provisions as were recited before the particular phrase. The meaning is: such provisions as sections 3, 10 and 11 of the Declaration of Rights or the election or appointment of officers provided for in section 27 of Article III, or jurisdiction of criminal cases in sections 11, 17, 22 and 25 of Article V, or as to original jurisdiction of the interest of minors in section 11 of Article V, or as to the style of process in prosecuting in the name of the State as provided in section 37 of Article V. In this case the doctrine of inclusio unius est exclusio alterius applies *52 and the words "other existing conflicting provisions of this Constitution" relate to provisions similar to those mentioned and do not include the provisions of sections 20 and 21 of Article V of the Constitution.
Section 18 of Chapter 27000 is the so-called "saving clause" and provides:
"If any provision, section, phrase, paragraph or portion of this Act shall be found unconstitutional or invalid for any reason, such invalidity shall in no wise be construed as affecting the validity of the remaining portions of this Act."
The said Chapter 27000 also recognizes the existence of section 50 of Article V of the Constitution and that the said Chapter was enacted "in Order to Bring Same Under the Provisions of a Recent Amendment to the Florida State Constitution Relating to Juvenile Courts". This opinion does not affect the validity of the Juvenile and Domestic Relations Court in Dade County in its entirety, but only those provisions specifically held to be in violation of sections 20 and 21 of Article V of the Constitution.
The writ of certiorari should be denied, with directions for further proceedings in accordance with this opinion.