William A. Wilkes Clay County Attorney Green Cove Springs
QUESTION:
Is the Clay County Board of County Commissioners authorized or required by law to expend county funds under a contract of the type and made under the circumstances outlined in the Statement of Facts?
SUMMARY:
Based on facts set forth by the Clay County Attorney, the Clay County Bicentennial Steering Committee had no statutory authority to enter into a binding contract for or on behalf of Clay County for the publication of a book containing the history of Clay County, and the resulting contract is therefore invalid and unenforceable against the county. However, the county appears to have had statutory authority to make such a contract in the first instance, and it could also have lawfully employed a quasi-public entity such as the Bicentennial Steering Committee, a nonprofit corporation, to carry out a public purpose authorized by law. Possessing such statutory authority in the first instance, as well as the authority to publish its historical book, the copyright on which was owned and held by the county, the county commission in the exercise of its sound discretion and judgment may now ratify the publication contract and the publication of the historical books and, upon due ratification thereof, pay from county funds the unpaid balance of the publication costs remaining outstanding on the original publication contract.
STATEMENT OF FACTS:
A contract for the publication of a book containing the history of Clay County was entered into by the `Clay County Bicentennial Steering Committee,' which was organized as a nonprofit corporation under the laws of Florida but is now dissolved. The Clay County Board of County Commissioners by motion or resolution `officially named' the committee `as the official county body to carry out Bicentennial functions in the county' without specifying the nature of those `functions' and without purporting to confer any powers on the committee. In addition, the board owned and held the copyright to the manuscript of a book containing the history of Clay County and `authorized' the committee to use same `without assuming any financial obligation for the publication.' Of the books printed or published under the committee's contract for publication, one-half have been sold and the remainder given into the physical custody of the clerk of the circuit court (for lack of other storage space). It appears that approximately $5,000 remains unpaid on the publishing contract.
In reply to your question, the powers and duties of county officers, including those pertaining to contracts, must be fixed by law. Section 5(c), Art. II, State Const. See also AGO 078-95, and cf. AGO 078-77. The committee in question was not established or provided for by any statute. As the committee was created by motion or resolution of the Clay County Board of County Commissioners, it was simply an advisory body and had no legal or official status. See Crandon v. Hazlett, 26 So.2d 638, 642 (Fla. 1946), in which the court stated:
 It is true that Section 5 of Article 8 of the Constitution provides that the powers and duties of County Commissioners shall be prescribed by law. They have no powers other than those expressly vested in them by statute, or that must be necessarily implied to carry into effect the powers thus expressly vested, and we have frequently held that their governmental powers cannot be delegated. While the County Commissioners may voluntarily appoint advisory committees, such as a welfare Committee and a Chairman thereof, to aid them in some advisory capacity, such as to gather information for the Commissioners and offer them their advice with reference thereto, the County Commissioners are not expressly compelled or authorized by law to appoint such a committee as the Welfare Committee, and therefore such a committee and its chairman have no legal or official status . . . . (Emphasis supplied.)
The governing body of the county could not lawfully delegate to the committee any governmental power, including the power to contract for the county or to make the contract which is the subject of your inquiry, without statutory authority. See AGO's 078-95, 078-77, and 078-68, and the authorities cited therein; Crandon v. Hazlett, Supra; cf. Pinellas County v. Jasmine Plaza, Inc., 334 So.2d 639 (2 D.C.A. Fla., 1976); Flesch v. Metropolitan Dade County, 240 So.2d 504 (3 D.C.A. Fla., 1970); Barrow v. Holland, 125 So.2d 749 (Fla. 1960); Florida Dry Cleaning and Laundry Board v. Economy Cash Carry Cleaners, Inc., 197 So. 550
(Fla. 1940). In the absence of such statutory authority, the contract for publication of the historical books in question is invalid and unenforceable in an action on the contract as against the county, and the county is not required to expend any funds in payment of the contract.
However, the county could have lawfully employed a nonprofit corporation, such as the committee in question (if a quasi-public agency or entity, as it apparently was) to carry out a publicpurpose, such as county participation in the national and state bicentennial program. See s. 13.9972(2), F. S. 1975, repealed effective December 31, 1977 (repealed after execution of the contract in question), and cf. s. 286.24, F. S., which included among the duties of the Bicentennial Commission of Florida those of planning a statewide bicentennial commemoration program, `including participation by all . . . counties,' and of `coordinating all such plans with any program which may be developed by local governments or other recognized organizations,' but also providing that `the position of the commission shall be advisory only and not managerial in relation to local observances.' The county could also have employed the committee for the purposes designated in s. 125.01(1)(f), F. S., read in light of limplied powers and liberal construction provisions in s.125.01(3). Section 125.01(1)(f) authorizes a county to:
 Provide parks, preserves, playgrounds, recreation areas, libraries, museums, historical commissions, and other recreation and cultural facilities and programs.
Section 125.01(3)(a), F. S., provides:
 (a) No enumeration of powers herein shall be deemed exclusive or restrictive, but shall be deemed to incorporate all implied powers necessary or incident to carrying out such enumerated powers, including, specifically, authority to employ personnel, expend funds, enter into contractual obligations, and purchase or lease and sell or exchange real or personal property.
And s. 125.01(3)(b) provides that the `provisions of this section shall be liberally construed in order to effectively carry out the purpose of this section.' The county could have contributed county funds or property to such a quasi-public entity for public purposes as described in s. 125.01(1)(f), or the board of county commissioners could have itself directly entered into a contract of the type in question for such public purposes and distributed the historical books to organizations such as the county historical commission, public libraries, etc., and to the public for a reasonable charge to recover costs of publication. See, for example, O'Malley v. Florida Insurance Guaranty Association,257 So.2d 9 (Fla. 1971); Burton v. Dade County, 166 So.2d 445 (Fla. 1964); Florida Power Corporation v. Pinellas Utility Board,40 So.2d 350 (Fla. 1949); and cf. O'Neill v. Burns, 198 So.2d 1 (Fla. 1967).
In 20 C.J.S. Counties s. 194, p. 1030, it is stated:
 Contracts made on behalf of a county, and within the general powers of the county to make, but made in an irregular manner or by agents without the requisite authority, may be ratified by such county through the agents who would have been authorized in the first place to make such contract, provided some official action by the proper authorities is taken with reference to the particular matter in question. If the ratification be express it must have the essentials required for an original authorization, that is, it must be made by the proper authorities in the same capacity in which they were required to act in making the contract in the first instance, and with full knowledge of the existence and nature of the contract in question, and in the manner required by law. (Emphasis supplied.)
That section also cautions, however, that:
 It is also essential that the contract be of such a nature that the body assuming to ratify it would have had the power to make it in the first instance; a contract wholly unauthorized and void cannot be ratified.
While the payment of money on an invalid contract does not by itself constitute a ratification of the contract, the board of county commissioners may in a proper case, and where its authority to make the contract existed as it did here, ratify a contract made in behalf of the county by agents lacking the requisite statutory authority. See AGO 078-95; cf. Ramsey v. City of Kissimmee, 149 So. 553 (Fla. 1933). Thus, possessing such statutory authority in the first instance, as well as the authority to publish its historical book, the copyright on which was owned and held by the county, the board of county commissioners, in its discretion, may now ratify the book's publication and upon proper ratification thereof pay from county funds the unpaid balance of the publication costs.
Prepared by: Jerald S. Price, Assistant Attorney General